ELEANOR SWETT, Indiv. and as Independent Ex'r of the Estate of Bobby Swett, Deceased, and as Independent Adm'r of the Estate of Helen Dulin, Deceased, *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF ALGONQUIN *et al.*, Defendants-Appellees (The County of McHenry *et al.*, Defendants).

Second District   No. 2—87—0876

Opinion filed May 3, 1988.—Rehearing denied June 7, 1988.

James E. Pancratz, Ltd., of Chicago (James E. Pancratz, of counsel), for appellants.

James L. Wright, of Militello, Zanck & Coen, of Crystal Lake, for appellee Village of Algonquin.

Elliot R. Schiff, of O'Connor & Schiff, of Chicago (Loretta M. Griffin, of counsel), for other appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Eleanor Swett, individually and as independent executor and independent administrator, respectively, of the estates of Bobby Swett, her husband, and Helen Dulin, her mother, and Linda Becker, daughter of Eleanor and Bobby Swett and granddaughter of Helen Dulin, appeal from the judgment of the circuit court of McHenry County dismissing with prejudice all counts of their second amended complaint against the defendants, the Iron Skillet, Inc., Raymond Schwartz, individually and as agent/employee of the Iron Skillet, Inc., and the Village of Algonquin. On October 26, 1984, plaintiff Eleanor Swett, her husband and her mother were walking across Illinois Route 31 in Algonquin in an easterly direction from the Iron Skillet restaurant towards its parking lot across the street when they were struck by an automobile being driven in a southbound direction on Route 31. Swett was injured, her husband and her mother killed. The plaintiffs' complaint against these defendants alleged a cause of action in negligence for personal injury and emotional distress as to Swett and alleged survival and wrongful death actions as to the decedents. Upon dismissal of plaintiffs' claims, the court found there was no just reason to delay enforcement or appeal (107 Ill. 2d R. 304(a)), and we have jurisdiction to consider the merits of this appeal.

In their respective motions to dismiss pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), these defendants alleged they owed no duty to plaintiffs, and the court agreed. Plaintiffs contend here their complaint sufficiently stated a cause of action in negligence against the Iron Skillet and Raymond Schwartz (hereafter referred to only as the Iron Skillet) in that it owed them as business invitees a duty of care to properly maintain a safe ingress and egress to and from the restaurant and, further, that the complaint sufficiently set forth a cause of action against the restaurant under section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 9—117), which prohibits the injuring or obstructing of highways. As to the Village of Algonquin,

plaintiffs contend their complaint sufficiently stated a cause of action in negligence under sections 3—102(a), 3—103(a) and 3—104(b) of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, pars. 3—102(a), 3—103(a), 3—104(b)), and section 11—304 of the Illinois Rules of the Road (Ill. Rev. Stat. 1985, ch. 95½, par. 11—304), and section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 9—117).

At the outset we note some general principles of law which will guide our determination. Common law negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Simmons v. Aldi-Brenner Co.* (1987), 162 Ill. App. 3d 238, 241.) Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 116; *Bowen v. City of Harvey* (1987), 164 Ill. App. 3d 637, 639.) It is not sufficient that the plaintiff's complaint merely alleges that a duty exists; the plaintiff must state facts from which the law will raise a duty. (*Erne v. Peace* (1987), 164 Ill. App. 3d 420, 423.) Whether a legal duty exists is a question of law to be determined by the court. (*Beal v. Kuptchian* (1987), 164 Ill. App. 3d 191, 193.) The issue of whether there is a duty is broad in its implication, whereas the issue of whether there was negligence is confined to the particular case. (*Zimmerman v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1048, citing *Mieher v. Brown* (1973), 54 Ill. 2d 539, 544-47.) Whether a legal duty exists involves consideration of more than just foreseeability of possible harm; it involves consideration of legal and social policies which include the foreseeability and likelihood of the injury, the magnitude of the burden of guarding against the injury and the consequence of placing that burden on the defendant. (*Erne v. Peace* (1987), 164 Ill. App. 3d 420, 423.) If no duty is found to exist, no recovery is possible as a matter of law. *Beal*, 164 Ill. App. 3d at 193.

In determining whether a motion to dismiss was properly allowed, all well-pleaded facts will be regarded as true and all reasonable inferences should be construed in plaintiff's favor. (*Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 217.) Facts which are not well pleaded will not be considered by the court (*Kavanaugh*, 164 Ill. App. 3d at 219), and conclusions of law or fact unsupported by specific facts in the record are not deemed to be admitted as true. (*Curtis v. Birch* (1983), 114 Ill. App. 3d 127.) A complaint should not be dismissed unless it clearly appears from the pleadings that no set

of facts can be proved which will entitle plaintiff to recover. *Anderson v. Marquette National Bank* (1987), 164 Ill. App. 3d 626, 627-28; *Kavanaugh,* 164 Ill. App. 3d at 217.

As to the Iron Skillet, counts II, IV, VI and IX of plaintiffs' second amended complaint alleged that on and prior to October 26, 1984, it owned, operated, possessed, maintained, controlled and managed the premises commonly known as The Iron Skillet Restaurant on Illinois Route 31 near its intersection with Beach Drive in Algonquin; that it owned, operated, supervised, maintained and controlled a parcel of property across Illinois Route 31 from the restaurant which it provided as well as promoted to its business invitees as a parking lot; that it used, enjoyed, employed, maintained and inspected an easement across that highway as a necessary means of egress and/or ingress for its business invitees to and/or from its restaurant building and its parking lot; that it undertook to provide a lighting system for the parking lot and easement which lighting, however, it found to be inadequate and hazardous prior to the date of the accident; that it owed the plaintiffs a duty to exercise ordinary care in the ownership, control, inspection and maintenance of its premises including its use, enjoyment, employment, maintenance and inspection of the aforementioned easement; that on October 26, 1984, the plaintiffs were business invitees of the Iron Skillet and were struck by an automobile while they were walking eastbound along the said egress toward the parking lot across from the Iron Skillet; that it breached its duty of care owed to the plaintiffs in that it:

"(a) Owned, maintained, possessed, controlled, inspected and managed its said premises in such a manner that as a proximate result thereof, the Plaintiff[s] [were] severely injured;

(b) Carelessly and negligently failed to provide a safe means of ingress and egress for its business invitees, including the Plaintiff[s], although Defendants knew that such failure was likely to cause serious injuries to the Plaintiff[s];

(c) Carelessly and negligently failed to improve the lighting previously erected at the aforesaid location when Defendants knew that such failure was likely to cause serious dangers to persons foreseeably using the said easement during evening hours;

(d) Carelessly and negligently failed to improve the lighting previously erected at the aforesaid location despite the Defendants' knowledge of the substantial increase of pedestrian traffic along the said easement and the prior incidents of danger or injury to pedestrians thereon;

(e) Carelessly and negligently failed to construct, maintain and employ an adequate lighting system at the aforesaid location when Defendants knew that such a condition was likely to cause serious injuries to its business invitees who were knowingly using said easement as a necessary means of egress and/or ingress to or from its restaurant and its said parking lot:

(f) Carelessly and negligently failed to install or request a marked and posted crosswalk for its business invitees using said easement notwithstanding Defendants' knowledge of the substantial increase of pedestrian traffic and the inadequate lighting system at the aforesaid location;

(g) Carelessly and negligently failed to warn either motorists or its business invitees of the said unsafe condition at the aforesaid location when Defendants knew from prior incidents of danger and/or injury to pedestrians, that such an omission was likely to cause serious injury to persons, such as the Plaintiff[s];

(h) Carelessly and negligently promoted and encouraged parking along Illinois Route 31 at said location when Defendants knew or should have known that such parking conditions would increase the known visibility problems for motorists as to pedestrian traffic and would obstruct the safe use of the public highway in violation of Ill. Rev. Stat., Chapter 121, Section 9–119."

It was alleged that as a direct and proximate result of one or more of the Iron Skillet's careless negligent acts or omissions, plaintiff Eleanor Swett was severely injured, sustained substantial damages and sustained great emotional disturbance, shock and injury to her nervous system, and that plaintiffs Bobby Swett and Helen Dulin suffered serious injuries which resulted in their deaths.

As to the Village of Algonquin, counts I, IV, V and VIII of plaintiffs' second amended complaint alleged that on and prior to October 26, 1984, Illinois Route 31 was a public highway running in a general northerly and southerly direction at or near its intersection with Beach Drive in the Village of Algonquin; that the municipal corporation of Algonquin (among others alleged in these counts, but not involved in this appeal) possessed, controlled, maintained, inspected, and regulated a network of streets and highways within its jurisdictional limits, including Illinois Route 31 at or near its intersection with Beach Drive; that Algonquin developed and adopted a traffic control plan to regulate, inspect and maintain the aforementioned portion of Illinois Route 31 and undertook to exercise said program of

action through various public improvements, including but not limited to the erection of streetlights, traffic signs and warning devices and the establishment of speed limits, parking facilities and a certain pedestrian walkway; that Algonquin owed the plaintiffs a duty to exercise ordinary care in its program of action and to not create an unsafe condition for motorists and pedestrians; that for some time prior to October 16, 1984, Algonquin knew or should have known through routine inspections that the aforementioned portion of Illinois Route 31 was regularly and frequently used as a crosswalk during evening hours by pedestrian traffic proceeding from or to the parking facility across from the Iron Skillet restaurant; that the parking facility was designed, engineered and constructed under the supervision of Algonquin and was maintained and operated with the defendant's knowledge and consent; that Algonquin owed the plaintiffs a duty to maintain, control and regulate Illinois Route 31, including the crosswalk area, in a reasonable, safe manner for ordinary use by pedestrians; that the plaintiffs, proceeding eastbound across Illinois Route 31 within the crosswalk were struck by a motor vehicle; and that Algonquin breached its duty of care to them in that it:

"(a) Carelessly and negligently failed to adequately possess, control, maintain, inspect and regulate said highway in violation of Ill. Rev. Stat., 1981, Chapter 85, Section 3—102(a) and as a proximate result thereof, the Plaintiff[s] [were] severely injured;

(b) Carelessly and negligently failed to exercise reasonable care in the use of their said traffic control plan in violation of Ill. Rev. Stat., 1981, Chapter 85, Section 3—103(a) and as a proximate result thereof, the Plaintiff[s] [were] severly [sic] injured;

(c) Carelessly and negligently failed to provide sufficient street lighting at or near the said crosswalk area although the [Defendant] knew or should have known that the lighting which had been previously erected was inadequate due to the increase of pedestrian traffic at the said location;

(d) Carelessly and negligently erected the said street lighting in such a manner which created a sudden unapparent and unanticipated dark area for motorists at or near the said crosswalk, when [Defendant] knew or should have known that such a condition would likely cause injury to pedestrians who were knowingly using said crosswalk on a regular and frequent basis during evening hours:

(e) Carelessly and negligently failed to warn either motorists or pedestrians of the said unsafe condition which endan-

gered the safe movement of traffic and pedestrians and of which was not reasonably apparent or anticipated by motorists or pedestrians in the exercise of due care and which was in violation of Ill. Rev. Stat., 1965 [*sic*], Chapter 85, Section 3—104(b);

(f) Carelessly and negligently failed to provide a marked and posted crosswalk for pedestrians notwithstanding [Defendant's] knowledge of the substantial increase of pedestrian traffic at the aforesaid location due to the said off-street parking facility designed and approved by the [Defendant] [itself];

(g) Carelessly and negligently failed to improve the street lighting and implement other said protective measures for pedestrian traffic at the aforesaid location despite the [Defendant's] knowledge of prior incidents of danger and/or injury to pedestrians using said walkway;

(h) Carelessly and negligently failed to appropriately reduce the designated speed limit at the aforesaid location despite [Defendant's] knowledge of the said substantial increase of pedestrian traffic, the unsafe and unapparent darkened condition and the prior incidents of danger and/or injury to pedestrians using said walkway; and

(i) Carelessly and negligently allowed parking along Illinois Route 31 at said location when [Defendant] knew or should have known that such parking conditions would lessen the visibility for motorists as to pedestrian traffic and would obstruct the safe use of the public highway in violation of Ill. Rev. Stat., Chapter 121, Section 9—119."

It was alleged that as a direct and proximate result of one or more of Algonquin's careless negligent acts or omissions plaintiff, Eleanor Swett, was severely injured, sustained damages and sustained great emotional disturbance, shock and injury to her nervous system, and plaintiffs Bobby Swett and Helen Dulin suffered serious injuries which resulted in their deaths.

As noted, the court granted the defendants' motions to dismiss, finding no duty owed by them to the plaintiffs and, as to the Iron Skillet, that the plaintiffs' "easement" theory was not supported in law and that there was "no physical defect in the physical condition of the public property alleged in the injuries and the damages were caused by the intervention of the independent cause."

■■ ■ We consider first whether the plaintiffs' second amended complaint sufficiently stated a cause of action against the Iron Skillet.

The duty owed an invitee was stated in *Altepeter v. Virgil State*

*Bank* (1952), 345 Ill. App. 585, 598:

> "The rule is that an occupant or owner of premises owes to an invitee a duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation, not to lead such person into a dangerous trap and to give such person adequate and timely notice and warning of latent or concealed perils which are known to the owner but not to the invitee. (38 Am. Jur., Neg., sec. 96, pp. 754-755.)"

The corollary to this rule is that there is a duty to provide an invitee with a reasonably safe means of ingress and egress, both within the confines of the premises owned or controlled by the inviter and, within limitations dictated by the facts of the case, beyond the precise boundaries of such premises. (*McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345; *Cooley v. Makse* (1964), 46 Ill. App. 2d 25; *cf. Badillo v. De Vivo* (1987), 161 Ill. App. 3d 596 (duty found owing to business invitee in *McDonald* distinguished, where plaintiff was attacked by third person one-half block from defendant's tavern).) When a means of ingress and egress is prescribed for invitees, it is the duty of the inviter to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition. *Seipp v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 852, 859.

At the outset, we note that although the complaint makes reference to the term "crosswalk" and "easement," it is clear from other allegations in the complaint (or lack thereof) that there was no formal easement or designated crosswalk; rather, portions of the roadway were used for crossing by restaurant patrons who had parked in the restaurant's lot across the street.

Plaintiffs contend the Iron Skillet breached the duty owed to them by failing either to improve existing lighting or construct adequate lighting at the roadway crossing area, or by failing to install or request a marked and posted crosswalk, or by failing to warn them of the unsafe condition of the crossing area, or by promoting and encouraging the parking "along Route 31," thus creating visibility problems for motorists and pedestrians. This latter allegation is contradicted, however, by plaintiffs' prior allegation that the Iron Skillet "provided as well as promoted [the parcel across the street from it] to its business invitees as a parking lot." As to the former allegations, it is apparent the "known, dangerous condition" from which plaintiffs were seeking to have the Iron Skillet protect them was the moving traffic on Route 31. This is not the type of condition which led the courts in *Cooley* and *McDonald* to find a duty on the part of the

owner or occupant.

In *Cooley*, the plaintiff was injured in a fall on a defective portion of a brick sidewalk. The area where the plaintiff fell was on a city-owned easement, two or three feet from two concrete steps leading up to the door of the defendants' tavern. The roots of a tree had heaved up a portion of the sidewalk. The sidewalk was the only means of ingress and egress to the tavern, and its exclusive use was by persons entering or leaving the tavern. Although the defendants there did not cause the defect, they knew of it and could reasonably have anticipated injuries to invitees, particularly after dark. The court found that, "[h]aving prescribed the route to their invitees for ingress and egress to and from their building, it was [the defendants'] duty to properly illuminate, give adequate warning of, or cause to be repaired a *known, dangerous* condition." (Emphasis added.) *Cooley*, 46 Ill. App. 2d at 31.

In *McDonald*, the plaintiff was injured when, upon leaving a bowling alley about midnight and proceeding to her car parked on the street, she passed between two cars parked partway on the parking lot and the sidewalk, stepped onto the parkway, and fell into a hole 12 inches deep and approximately two feet wide, extending from the sidewalk to the curb across the parkway. The hole, obscured by grass and weeds, was at the location where a gas service pipe for the building previously had been installed. The owner testified he knew of the defect, but not the extent of it. Relying, *inter alia*, on *Altepeter* and *Cooley*, the court rejected the defendant's contention it owed no duty to protect the plaintiff from the injury which occurred outside the boundaries of its premises. *McDonald*, 1 Ill. App. 3d at 350-52.

It is clear in the case at bar that there was no static, hidden defect of the roadway which was known to the Iron Skillet but not plaintiffs and which caused their injuries. Although the Iron Skillet clearly was aware that its invitees were crossing the roadway, its duty to plaintiffs was to disclose or warn against only latent or concealed perils of which it had knowledge and its invitees did not. Plaintiffs have not alleged they were unaware that the area they were crossing was a roadway for vehicular traffic. Accordingly, they cannot be said to have been unaware of the ordinary danger of crossing such a roadway.

We find unpersuasive plaintiffs' attempt to distinguish *Laufenberg v. Golab* (1982), 108 Ill. App. 3d 133, and *Decker v. Polk Brothers* (1976), 43 Ill. App. 3d 563, which are relied upon by the Iron Skillet in support of its position that it owed plaintiffs no duty. In *Laufenberg*, the court found the injuries suffered by the plaintiff while

crossing a public street to the defendant's racetrack from the horse stables which plaintiff used for her horses, and which was also possibly owned and maintained by the defendant, had no connection with any physical condition of the street. Instead, plaintiff's injuries resulted solely from the intervention of an independent factor: the negligence of a motorist. Plaintiffs here point out, however, that they have alleged various acts or omissions of the Iron Skillet with regard to the adequate illumination of the area which were a substantial and proximate cause of their injuries along with the contributing negligence of the motorist. As the Iron Skillet argues, however, illumination is not considered a condition of the premises. Illumination is recognized as a form of warning; where there is no duty to protect against the condition which causes the harm, there is no duty to illuminate so as to warn of it. *Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 920-21; accord *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 15-16; see also *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 996 (where there was no duty to provide barriers, there was no duty to warn of the lack of barriers).

In *Decker*, the other case relied on by defendant which plaintiffs seek to distinguish, the evidence showed that Polk Brothers operated two retail outlets within one-quarter of a block of each other, across George Street. Both stores had entrances on Central Avenue and adjacent to each was a public sidewalk. The plaintiff began her shopping at one of the stores and was directed to the other for the item she sought. After concluding her purchase at the store, and on her way to her car parked on Central Avenue, she twisted her ankle on a depression in the sidewalk and fell. Plaintiff sued the City of Chicago and Polk Brothers, contending as to the latter that she was lawfully on its premises when she fell because of a "broken sidewalk and a protruding water cover which was located near the entrance of said premises." On review, the court, relying on *Cooley* and *McDonald*, found the trial court had properly entered judgment *n.o.v.* in favor of the defendant where the evidence showed the sidewalk in question was owned, controlled, and maintained by the City of Chicago and was used by the public at large, not just the patrons of the defendant. *Decker*, 43 Ill. App. 3d at 563.

■ Plaintiffs contend here they have sufficiently alleged that the use of the "walkway" to and from the defendant's parking lot was utilized by patrons of the defendant's restaurant only and not by the public at large. Although it reasonably may be inferred from plaintiffs' complaint that any pedestrians in the "walkway" were likely to be en route to or from the Iron Skillet, we nonetheless cannot find

the exclusivity of use which plaintiffs urge since it is clear plaintiffs were injured while on Illinois Route 31, the primary use of which is by the motoring public at large. We conclude the Iron Skillet owed plaintiffs no duty to protect them from the motorists traveling on the public roadway located between its restaurant and its parking lot.

■ Also with regard to the Iron Skillet, the plaintiffs contend they sufficiently stated a cause of action based on section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 9—117). In pertinent part, that section provides:

> "If any person injures or obstructs a public highway by felling a tree or trees in, upon or across the same, or by placing or leaving any other obstruction thereon, or encroaching upon the same with any fence, or by plowing or digging any ditch or other opening thereon, or by turning a current of water so as to saturate, wash or damage the same, or by plowing in or across or on the slopes of the side gutters or ditches, or by placing any material in such ditches, or in any way interfering with the free flow of water therein, or leaves the cuttings of any hedge thereon for more than 10 days, without the permission of the highway authority having jurisdiction over such highway, he shall be guilty of a petty offense ***." Ill. Rev. Stat. 1985, ch. 121, par. 9—117.

Plaintiffs contend the broad reference to "any other obstruction" arguably extends to the allowance of roadside parking for patrons of the restaurant. Plaintiffs cite no authority in support of their position, and we find it untenable. We agree with the Iron Skillet that the ordinance on its face is designed to obviate obstructions in and damage to the highway structure itself by items in the nature of felled trees, fences, ditches, plowing, and flooding. (See *Nunley v. Mares* (1983), 114 Ill. App. 3d 779, 787-88.) Although the realm of possible obstructions is not limited thereto by the language of the statute, section 1—102 of the Illinois Highway Code, which sets forth the legislative intent of the Code, identifies the provision of safe and efficient highway transportation as a matter of public concern and provides that it is the declared and continuous policy of the legislature to provide for improvement of highways and the highway transportation system as well as the preservation of investment in highways. (Ill. Rev. Stat. 1985, ch. 121, par. 1—102.) "Highways" are defined in pertinent part as "any public way for *vehicular* travel." (Ill. Rev. Stat. 1985, ch. 121, par. 2—202.) Plaintiffs here, of course, were pedestrians, not engaged in vehicular travel, and, thus, arguably not within the class of persons which would be affected by the action of any person who "in-

jures or obstructs a public highway" as set forth in section 9—117. A reading of the statute in its entirety evidences no intent on the part of the legislature to encompass cars lawfully parked "along" the highway—thus not obstructing vehicular travel—within the purview of this statute.

These circumstances suggest, as the Iron Skillet argues, that the statute cannot be construed in this instance as providing plaintiffs with a private right of action in tort. (See, *e.g., Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 386-91; *Peel v. Yellow Cab Co.* (1986), 147 Ill. App. 3d 992; *Thompson v. Tormike, Inc.* (1984), 127 Ill. App. 3d 674.) Further, although plaintiffs allege the Iron Skillet breached its duty of care owed to them in that it "[c]arelessly and negligently promoted and encouraged parking along Illinois Route 31 at said location," no facts are alleged which would support this conclusion, and, in fact, plaintiffs' complaint alleges the Iron Skillet "provided and promoted [a parcel of property on the westerly [*sic*-easterly] side of Illinois Route 31] to its business invitees as a parking lot." Moreover, plaintiffs' complaint fails to allege the Iron Skillet had any authority to permit such on-street parking or, if on-street parking was occurring, that it was unlawful, *i.e.*, without the permission of the relevant highway authority which did have jurisdiction. We conclude plaintiffs' complaint also failed to state a cause of action based on section 9—117 of the Illinois Highway Code.

Accordingly, based on the applicable law and the pleadings at bar, we conclude the court did not err in dismissing plaintiffs' second amended complaint against the Iron Skillet where, on their third attempt, plaintiffs failed to allege facts which would raise a legal duty on the part of the Iron Skillet toward the plaintiffs. Also, because we have found no duty of care owed to the plaintiffs, we need not consider plaintiffs' argument that the Iron Skillet's negligence was a contributing proximate cause of the accident. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 165.

We next consider whether the plaintiffs' second amended complaint sufficiently stated a cause of action against the Village of Algonquin. Plaintiffs contend they sufficiently pleaded valid causes of action against the village under sections 3—102, 3—103 and 3—104 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 3—102(a), 3—103(a), 3—104(b)), section 11—304 of the Illinois Rules of the Road (Ill. Rev. Stat. 1985, ch. 95½, par. 11—304), and section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 9—117).

The village contends the plaintiffs' complaint fails to establish a duty owed by it under either the common law, the Tort Immunity

Act, or the Illinois Highway Code.

■ Initially, we note plaintiffs' contention their complaints sufficiently pleaded a cause of action under the various sections of the Tort Immunity Act evidences a misunderstanding of the Act. It is not a "Tort Duty Act." (Sotos, *"No Duty, Judge" A Guide to Municipal Nonliability*, 12 Bar News 7, 34 (1988) (Du Page County Bar Association).) The Act itself creates no new duties. (*Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 435; *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445 ("The Tort Immunity Act is not a catalog of duties or a source of rights"); *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 512 ("The Tort Immunity Act does not create any new liabilities for negligent acts or omissions which did not previously exist").) Section 3—102 of the Tort Immunity Act merely codified the common law duty of a local public entity to maintain its property. (Ill. Rev. Stat. 1985, ch. 85, par. 3—102; *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 435.) Accordingly, we consider whether plaintiffs' complaint states a cause of action under that common law duty.

■ In the *Horrell* case noted above, the court considered the common law duty of a local government concerning public property:

"The traditional common law duty of local governments concerning public property is a duty to maintain that property in a reasonably safe condition. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E. 2d 116.) The duty is only to 'maintain' the property and does not require the creation of public improvements. (*American State Bank v. Cude* (1975), 30 Ill. App. 3d 206, 207, 331 N.E. 2d 825.) A municipality is not liable for the failure to undertake public improvements even where an ordinance authorizes such a project. (*Best v. Richert* (1979), 72 Ill. App. 3d 371, 374-75, 389 N.E. 2d 894.) Thus, the duty to maintain does not commence until an improvement is actually undertaken. (*Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 478, 300 N.E. 2d 590.)" *Horrell*, 145 Ill. App. 3d at 432.

See also *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 995.

It is evident from the allegations of plaintiffs' own complaint that the village here had not undertaken to provide a marked and posted crosswalk for pedestrians as that term is defined, in pertinent part, in section 1—113 of the Illinois Motor Vehicle Code:

"Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface placed in accordance with the provisions in the Manual adopted by the Department of Transporta-

tion as authorized in Section 11—301." (Ill. Rev. Stat. 1985, ch. 95½, par. 1—113(b).)

Moreover, the crossing area in question apparently was not at the exact intersection of Illinois Route 31 and Beach Drive inasmuch as exhibits appended to plaintiffs' complaint show the accident occurred "approximately 70 feet North of Beach Drive."

█ In determining the liability of a governmental unit toward a pedestrian crossing a roadway outside of a designated crosswalk, the court in *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, held that such persons are *not* intended or permitted users of the street and, therefore, are not making use of the street in a foreseeable manner. (*Risner*, 150 Ill. App. 3d at 831.) Accordingly, the court there found the City of Chicago owed no duty to the plaintiff, who was hit by a bus while he was jaywalking. Certainly, it has been acknowledged that pedestrians may and do use streets in any number of various ways, including crossing them. (*Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 477.) Nonetheless, such use of the street—even with the knowledge of such use by the governmental entity—does not serve to convert the streets to sidewalks or, as alleged here, to crosswalks so as to give rise to a duty on the part of the governmental unit toward the plaintiff. *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827 (where the court declined to find the city owed plaintiff a duty based on his argument that, as a jaywalker, he was a foreseeable user of the city streets); *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428 (where the court found the city owed no duty to pedestrian to provide a crosswalk for a bus stop at a busy intersection); *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473 (where the court affirmed dismissal of the plaintiff's complaint against the city finding it owed plaintiff no duty in spite of plaintiff's allegation the city had held out the roadway for use by the public and that it knew or should have known that the edge of the roadway had become a pedestrian roadway by reason of its location and regular use by a large number of pedestrians, especially persons attending or associated with Southern Illinois University).

█ In an attempt to distinguish the instant cause, plaintiffs argue here that the village "intended and permitted" them and others to cross the street at the site of the accident by reason of the location of the restaurant and its parking lot across the street. We agree with the village, however, that there is no distinction between the type of conduct alleged on the part of the village here and that alleged against the various governmental entities in *Deren, Horrell* and in two other cases, *Frakes v. Martin* (1987), 151 Ill. App. 3d 676, and

*Best v. Richert* (1979), 72 Ill. App. 3d 371. In *Deren,* the plaintiff alleged that the city had permitted steep embankments to exist adjacent to the roadway, thus requiring pedestrians to walk in the roadway (*Deren,* 13 Ill. App. 3d at 474); in *Frakes,* the plaintiff showed that the school district had placed a fence across a pedestrian footpath, thus causing the plaintiff to walk along the roadway (*Frakes,* 151 Ill. App. 3d at 677-78); in *Horrell,* the plaintiff alleged that the city had permitted a bus stop to be located at a busy intersection (*Horrell,* 145 Ill. App. 3d at 429-30); and in *Best v. Richert,* it was shown that a sidewalk ended on one side of the street and then continued on the opposite side of the street, thus causing plaintiffs to cross the street to the other sidewalk (*Best,* 72 Ill. App. 3d at 371). In none of these cases did the court find the circumstances attributed to the governmental entities' action or lack of it created a duty toward the plaintiff or plaintiffs, nor do we here.

We find unavailing plaintiffs' attempt to distinguish this cause on the basis the village here undertook a duty toward them when it erected streetlights and, thus, may be held liable under the exception to immunity noted in *Horrell,* section 3—103(a) of the Tort Immunity Act. (Ill. Rev. Stat. 1985, ch. 85, par. 3—103(a); *Horrell,* 145 Ill. App. 3d at 434-35.) That exception holds a public entity liable, "if after the execution of such plan or design it appears from its use that it has created a condition that is not reasonably safe." (Ill. Rev. Stat. 1985, ch. 85, par. 3—103(a).) Plaintiffs' complaint here alleged that the village erected streetlights within the area in question as part of the traffic control plan and failed to improve this lighting despite its knowledge that the lighting was inadequate and ineffective, so as to create "a sudden unapparent and unanticipated dark area for motorists." This, in turn, the complaint alleged, "would likely cause injury to pedestrians who were knowingly using said crosswalk on a regular and frequent basis during evening hours."

Plaintiffs cite two cases in which governmental units were held to be liable for injuries caused by deficient or inadequate streetlighting, *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, and *Greene v. City of Chicago* (1978), 73 Ill. 2d 100. In each case, however, the plaintiff was a motorist—a person using the street as it was intended to be used—despite the fact that in *Greene,* the motorist's car had stalled and he was hit by another motorist while he was standing on the roadway behind his disabled vehicle. He was nonetheless utilizing the street as a motorist, not as a pedestrian. In each case, the governmental unit was not shielded from liability because, having executed its plan of streetlighting, it appeared that the lighting itself or the

failure to maintain the lighting had created a condition that was not reasonably safe. (*Baran*, 43 Ill. 2d at 180-81; *Greene*, 73 Ill. 2d at 108-09; see Ill. Rev. Stat. 1985, ch. 85, par. 3—103.) Plaintiffs also point in their reply brief to *Predny v. Village of Park Forest* (1987), 164 Ill. App. 3d 688, as being illustrative of the exception to governmental immunity provided in section 3—103(a) of the Tort Immunity Act. In *Predny*, the plaintiff, a bicyclist, was injured while riding his bicycle down a concrete path leading into a service driveway of a shopping center. He was struck by a delivery truck and rendered a quadraplegic. The intersection of the concrete bicycle path and service driveway was lined with a row of lilac bushes which prevented a clear view of the intersection. The court reversed a summary judgment entered in favor of the village where it was "undisputed that the village owned the bicycle path up to the last 7½ feet before the intersection, that 3.9 feet of the bush was extended over village property at the time of the accident, that a village employee reported the bush obstruction several times and trimmed them once on his supervisor's order, that there had been two similar accidents at the same location prior to plaintiff's accident, that the village originally required the bushes to be planted as a screen, and that a ramp connecting the path to the service driveway was installed by the village." (*Predny*, 164 Ill. App. 3d at 697.) Thus, unlike the pedestrian using the street at bar, the use of the concrete path by the bicyclist plaintiff in *Predny* was a *foreseeable* use.

These cases point up an important distinction. As noted above, section 3—102 of the Tort Immunity Act creates no new duties; it simply articulates the common law duty to which the subsequently delineated immunities apply. (*Horrell*, 145 Ill. App. 3d at 435.) The "duties" described in the exceptions to these immunities provisions (specifically here sections 3—103 and 3—104) all derive from the basic common law duty which is articulated in section 3—102. (Ill. Rev. Stat. 1985, ch. 85, pars. 3—102, 3—103, 3—104.) Where there is no duty owed to the plaintiff under section 3—102, no duty exists under the exceptions to the subsequent immunity sections, either. (*Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 832; *Horrell*, 145 Ill. App. 3d at 435; *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 165.) As was true of the jaywalker in *Risner*, the pedestrian plaintiffs here who were crossing the roadway outside of a designated crosswalk were not making a foreseeable use of the roadway so as to create a duty in the village toward them under section 3—102 of the Tort Immunity Act. (*Risner*, 150 Ill. App. 3d at 830-31.) Thus, the village could owe no duty to plaintiffs under the exceptions to immunity in

sections 3—103 and 3—104, either.

Accordingly, we find plaintiffs' second amended complaint failed to state a cause of action against the village under the common law codified in the Tort Immunity Act.

We reject plaintiffs' further argument that the village owed them a duty to maintain Illinois Route 31, including the "crosswalk," in a safe condition under section 11—304 of the Illinois Rules of the Road. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—304.) That section provides:

> "Local traffic-control devices. Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic."

As noted above, no crosswalk had been designated here, however, and until the village undertook such a traffic control device, it could have no duty to plaintiffs to maintain it in a safe condition. *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, and *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, upon which plaintiffs rely, are distinguishable on their facts where, in *Bentley*, the township and its highway commissioner were found to have a duty of reasonable care in maintaining the visibility of a stop sign placed by the State at an intersection of township and State roads and where, in *Janssen*, the city was found to have a statutory obligation to post warning of the hazard created by a traffic island which projected 5½ feet into the outer lane of an intersection of a State highway that was under State control, in view of its agreement with the State giving the city maintenance jurisdiction over the approach lane which would bring a motorist into contact with the hazardous projection.

Finally, as we have also done above with respect to the Iron Skillet, we reject plaintiffs' argument that their complaint stated a cause of action against the village under section 9—117 of the Illinois Highway Code covering obstructions. (Ill. Rev. Stat. 1985, ch. 121, par. 9—117.) Assuming merely for the sake of argument that cars parked along the side of the road fall within the broad meaning of the phrase "any other obstruction," it is clear the statute is concerned only with obstructions placed "without the permission" of the relevant highway authority. Plaintiffs have clearly alleged that the village, the relevant highway authority here, allowed such parking along the roadway. Consequently, plaintiffs' second amended complaint fails to

state a cause of action on the basis of this statute.

In sum, we find plaintiffs' second amended complaint failed to state a cause of action against either the Iron Skillet or the Village of Algonquin and that the court properly allowed their motions to dismiss.

Judgments affirmed.

REINHARD and NASH, JJ., concur.