2025 IL App (1st) 250292-U

SECOND DIVISION
December 16, 2025

No. 1-25-0292

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

# IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | |
|---|---|
| MARIA DIAZ, Individually and as Executor of the Estate of Raul Diaz, Deceased, ISRAEL DIAZ, RAUL DIAZ, JR., and ABRAHAM DIAZ, | ) Appeal from the<br>) Circuit Court of<br>) Cook County<br>) |
|     Plaintiffs-Appellants, | )<br>) |
|  v. | ) No. 23 L 5647<br>) |
| LOYOLA UNIVERSITY MEDICAL CENTER, | ) Honorable<br>) Maire Dempsey, |
|     Defendant-Appellee. | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred with the judgment.

## ORDER

¶ 1     *Held*: We affirm the trial court's grant of summary judgment in favor of defendant where defendant had no duty to ensure the safe condition of the public crosswalk used by the decedent when a vehicle struck him.

¶ 2     Plaintiffs Maria Diaz, Israel Diaz, Raul Diaz, Jr., and Abraham Diaz appeal the trial court's

grant of summary judgment in favor of defendant, Loyola University Medical Center (Loyola), on

plaintiffs' complaint alleging negligence and wrongful death. On appeal, plaintiffs contend that

summary judgment should have been denied where Loyola had a duty to provide safe ingress and egress for visitors to the hospital, and a question of fact exists as to whether Loyola had control over the public crosswalk used by Raul Diaz when he was struck and killed. For the following reasons, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4     Loyola's hospital campus is located at 2160 1st Avenue in Maywood, Illinois, in Cook County. This stretch of 1st Avenue is also known as IL 171. We refer to this roadway as IL 171, since that is the designation used by the parties in their briefs.

¶ 5     On June 27, 2022, Raul drove his brother to Loyola's Emergency Department (ED) for medical care. After dropping off his brother, Raul parked in the lot at Miller Meadow. Miller Meadow is part of the Cook County Forest Preserve and is located across IL 171 from Loyola. After parking his car, Raul walked across IL 171 to Loyola to join his brother in the emergency room. At approximately 9 p.m., Raul left Loyola and walked to his car parked at the Miller Meadow lot. As he crossed IL 171 on the crosswalk, he was struck and killed by an automobile.

¶ 6     Plaintiffs filed an action against the driver of the vehicle, Derrick Young, the villages of Maywood and Forest Park, Cook County, and Loyola. Plaintiffs later voluntarily dismissed defendants Maywood, Forest Park, and Cook County. When they filed their second amended complaint, Loyola was named as the sole defendant.

¶ 7     Plaintiffs' second amended complaint alleged that the crosswalk used by Raul "was part of [a] pedestrian path leading from the parking lot at Miller Meadow to the Loyola University Medical Center." The complaint described this path as consisting of

    "a crosswalk from the entrance to the [Miller Meadow] parking lot on the east side of IL

    171, across IL 171, through the road verge on the west side of IL 171 and continuing with

another crosswalk across [Loyola's] parking lot, up a set of stairs to another crosswalk across an inner drive to a sidewalk that led to an entrance for [Loyola.]"

¶ 8   Plaintiffs alleged that at the time of the accident, "there was no lighting of any kind on the Miller Meadow side" of the IL 171 crosswalk, and there were only two "yield for pedestrian" signs located approximately 50 and 10 yards south of the crosswalk. As a result, "the crosswalk across IL 171 on the Miller Meadow side was not reasonably safe for pedestrian use at night due to the lack of lighting, inadequate signage and street markings."

¶ 9   Plaintiffs alleged that Loyola knew its visitors used the Miller Meadow parking lot and should have known that the crosswalk was not reasonably safe for pedestrian use. They alleged that Loyola owed Raul a duty to provide reasonably safe ingress and egress from the parking lot at Miller Meadow to Loyola for use by visitors but breached that duty by failing to provide adequate signage and lighting, or to warn of the unreasonably dangerous conditions. Plaintiffs alleged that, as a direct and proximate result of Loyola's negligence, Raul suffered injuries causing his death, and plaintiffs suffered substantial personal and pecuniary losses.

¶ 10   Loyola filed a motion for summary judgment. Loyola argued that it owed no duty to Raul as a pedestrian on the crosswalk where it did not "own, occupy, construct, operate, maintain or otherwise control the roadway upon which the crosswalk exists." In support, Loyola attached the affidavit of John Paulus, Loyola's regional manager of parking and communications. Paulus stated that IL 171 is "a State of Illinois Route," and the state was "responsible for the design, installation and maintenance of the Subject Crosswalk and any associated lighting and signage."

¶ 11   Paulus averred that Loyola has a dedicated parking lot for emergency room visitors, as well as two overflow lots, on its campus. He stated that the ED parking lot is "free of charge" for ED visitors. He also stated that Loyola maintains daily parking flow data in the normal course of

business. Data from June 27, 2022 indicated that "there were available ED Parking Lot spaces the entirety of the day." Paulus stated that Loyola never used the Miller Meadow parking lot as an overflow lot, nor did it advise visitors to use the Miller Meadow lot.

¶ 12    Paulus further averred that Loyola "did not construct, maintain or control the pedestrian 'bump out' where the Subject Crosswalk meets its property." Rather, the State of Illinois commissioned a resurfacing project for IL 171, and as part of the project, the subject crosswalk was reinstalled and repainted. The project also involved the installation of "an ADA pedestrian ramp" where the crosswalk abuts the curb on the Loyola side of the roadway. Paulus stated that Loyola "was not involved in, consulted regarding, and did not in any way control the Project."

¶ 13    In response, plaintiffs argued that Loyola had an independent duty to provide safe ingress and egress from the Miller Meadow parking lot to the hospital, regardless of whether it owned the property. Plaintiffs argued that whether Loyola had control over the crosswalk was a question of fact not suitable for disposition on a summary judgment motion.

¶ 14    After reviewing the parties' filings, the trial court granted Loyola's motion and dismissed plaintiffs' complaint with prejudice.

¶ 15    Plaintiffs filed this appeal.

¶ 16                                II. ANALYSIS

¶ 17    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2022). In an action for negligence, plaintiffs must allege sufficient facts establishing the existence of a duty owed by Loyola, a breach of that duty, and injuries proximately resulting from the breach. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991). Whether a duty of care exists is

a question of law that may be determined on a motion for summary judgment. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 421 (1992). If plaintiffs' allegations fail to show the existence of a duty, the grant of summary judgment in favor of Loyola is appropriate. *Vesey*, 145 Ill. 2d at 411. We review the trial court's order granting summary judgment *de novo*. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998).

¶ 18    In their second amended complaint, plaintiffs alleged that the crosswalk on IL 171, where Raul was struck and killed, "was part of [a] pedestrian path leading from the parking lot at Miller Meadow to the Loyola University Medical Center." They alleged that the path's sole purpose was for ingress and egress from the parking lot at Miller Meadow to Loyola, and that the Miller Meadow parking lot was commonly used by visitors to Loyola. Plaintiffs argue that Loyola had an independent duty towards their visitors where the pedestrian path "constituted the only viable pedestrian connection between the Miller Meadow parking lot and [Loyola's] hospital campus."

¶ 19    Plaintiffs are correct that an occupant or owner of the premises has a duty to provide an invitee with a reasonably safe means of ingress to and egress from the premises. *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 87 (1988). However, this duty does not generally extend to public highways, even if the roadway is directly adjacent to the business owner's property and used by patrons to enter and exit the property. *Id*. An exception exists where the owner/occupier of the property appropriates or assumes control of the public roadway for its own purposes. *Caracci v. Patel*, 2015 IL App (1st) 133897, ¶ 23.

¶ 20    We find *Swett* instructive. In *Swett*, the defendants' restaurant was located on Illinois Route 31, and the parking lot promoted for use by its patrons was on the opposite side of the highway. In order to access the restaurant from the parking lot, patrons had to walk across the highway. *Swett*,

169 Ill. App. 3d at 83. The plaintiffs were struck on the highway as they walked to the parking lot after leaving the restaurant. *Id*. at 81.

¶ 21     The appellate court noted that the dangerous condition plaintiffs sought protection from was simply moving traffic on the highway. *Id*. at 87. The plaintiffs did not allege that they were unaware of such traffic, or that they had crossed an area containing other hidden dangers. *Id*. at 88. Also, there was no showing that the defendants had exclusive use of the public highway. *Id*. at 89. The court concluded that the defendants did not have a duty to protect the plaintiffs where they were injured on a public highway owned, controlled, and maintained by the city of Chicago, and that portion of the highway was not maintained for the exclusive use of the restaurant. *Id*. at 89-90; see also *Dodd v. Cavett Rexall Drugs, Inc.*, 178 Ill. App. 3d 424, 433-35 (1988) (finding that a business had no duty to protect customers from a defect in the public sidewalk adjacent to its store where the sidewalk was not the only means of ingress and egress, and the business did not obstruct the sidewalk or otherwise prevent the general public from using the sidewalk).

¶ 22     Here, it is undisputed that Loyola does not own the roadway containing the crosswalk Raul used when he was struck by a motorist. IL 171 is a state highway routinely used by the public. There is no allegation that Loyola appropriated this portion of the highway for its exclusive use. Furthermore, like the plaintiffs in *Swett*, plaintiffs here have not alleged hidden defects of which Loyola had knowledge, or that they were somehow unaware of the traffic on IL 171.

¶ 23     Additionally, although plaintiffs alleged that Loyola promoted the Miller Meadow lot as alternative parking for its visitors, the lot and the "pedestrian path" across IL 171 from the lot were not the only means of ingress to and egress from Loyola. Other lots were available for use, including a free dedicated lot for emergency room visitors. These parking lots are located on Loyola's property with no need to cross IL 171. Paulus stated in his affidavit that on the day of the

incident, "there were available ED Parking Lot spaces the entirety of the day." This fact distinguishes our case from *Cooley v. Maske*, 46 Ill. App. 2d 25 (1964), which plaintiffs cite as support. In *Cooley*, the public walkway used by the injured invitee abutted the entrance to the business, and there was no alternative route of ingress or egress. *Id.* at 30-31.

¶ 24    Plaintiffs contend that a question of material fact exists as to whether Loyola had control over the installation or design of the crosswalk in question, and such control would support a duty owed by Loyola. They allege that the crosswalk across IL 171 was rehabilitated to comply with the Americans with Disabilities Act in 2019, and during that time, Loyola removed parking spaces and installed a crosswalk across its own lots.

¶ 25    However, Paulus stated in his affidavit that the State of Illinois commissioned the resurfacing project for IL 171, and as part of the project, an ADA pedestrian ramp was installed on the Loyola side of the roadway. Paulus stated that Loyola "was not involved in, consulted regarding, and did not in any way control the Project." Plaintiffs did not present evidence rebutting these statements.

¶ 26    Furthermore, the mere fact that Loyola made improvements on its own property near the IL 171 crosswalk does not show it had assumed control over the crosswalk. There is no appropriation of public property by a private landowner absent an affirmative act. *Dodd*, 178 Ill. App. 3d at 435. Plaintiffs have not alleged that Loyola modified the public crosswalk on IL 171. Nor have they alleged that Loyola engaged in any affirmative act to control that crosswalk. While Loyola may have installed a crosswalk and removed parking spaces on its own property in response to the state's resurfacing project, there is no allegation that, through its actions, Loyola obstructed or otherwise prevented the general public from using the IL 171 crosswalk. For a duty of care to arise, Loyola must have engaged in affirmative conduct that prevented the public from

using the IL 171 crosswalk in an ordinary manner. *Id*. at 433. Plaintiffs' complaint alleged no such conduct.

¶ 27 For the reasons set forth, we find that Loyola had no duty of care towards Raul as he used the IL 171 crosswalk between Miller Meadow and Loyola's hospital campus. To state a cause of action for negligence, plaintiffs must allege facts establishing the existence of a duty. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Without a showing from which a court could infer the existence of a duty, no recovery is possible as a matter of law and summary judgment in favor of the defendant is appropriate. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13. Accordingly, the trial court properly granted summary judgment in favor of Loyola.

¶ 28                                III. CONCLUSION

¶ 29 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 30 Affirmed.