GEORGE ANDERSON, Plaintiff-Appellant, v. MARQUETTE NATIONAL BANK et al., Defendants-Appellees.

First District (2nd Division)   No. 86—2566

Opinion filed November 24, 1987.—Rehearing denied January 5, 1988.

Lois Solomon and Arthur M. Solomon, both of Solomon & Behrendt, of Chicago, for appellant.

William R. Dunn, of Oak Lawn, for appellee Jack Weber.

Alvin R. Becker and Steven P. Garmisa, both of Beermann, Swerdlove, Woloshin, Barezky & Berkson, Merrill H. Manchik, of Manchik & Glickman, and Stephen A. Snakard, of McCarthy, Duffy, Neidhart & Snakard, all of Chicago, for other appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, George Anderson, appeals the dismissal with prejudice of his amended complaint in which he sought to set aside an amendment to an *inter vivos* trust created by his now deceased uncle. The original trust left Anderson 41.5% of the assets and the amendment, executed two weeks prior to death, deleted Anderson's share and instead gave it to the uncle's accountants and lawyer. The trial court dismissed the complaint as time barred under section 13—223 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—223), pursuant to defendants' motions to dismiss under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). Plaintiff filed a timely notice of appeal.

A motion to dismiss admits all facts that are well pleaded (*O'Fallon Development Co. v. Ring* (1967), 37 Ill. 2d 84, 88, 224 N.E.2d 782), and all reasonable inferences favorable to the pleader (*Bishop v. Ellsworth* (1968), 91 Ill. App. 2d 386, 391, 234 N.E.2d 49). A complaint should not be stricken unless the court concludes that there is no possible set of facts in support of the allegations that

would entitle the plaintiff to relief. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305, 312 N.E.2d 259.

Applying these well-established principles, the pertinent facts are that the plaintiff is the only nephew of Martin Wiswald. Wiswald died on August 30, 1979, while a patient at the Mayo Clinic in Rochester, Minnesota. The decedent was survived by his wife, defendant Josephine Wiswald, by his sister (plaintiff's mother), and by plaintiff. Decedent had no children and no brothers or sisters other than plaintiff's mother, Clare Anderson.

Plaintiff maintained a close family relation with the decedent at all times prior to his death. At the decedent's request, plaintiff, in 1975, gave up other employment to accept employment in decedent's business, Martin Muffler Sales, Inc., in Chicago, Illinois. Plaintiff was so employed continuously to the date of Martin Wiswald's death. The decedent reposed great confidence in plaintiff and had appointed the plaintiff as treasurer of Martin Muffler Sales, Inc., which position plaintiff occupied until after decedent's death. During his childhood, plaintiff spent much of his time with his uncle because plaintiff's father was chronically ill and was hospitalized for extended periods. The decedent looked after his only nephew as a surrogate father would, and at all times decedent was concerned for the welfare and economic security of the plaintiff.

On repeated occasions, decedent informed and assured his sister, Clare Anderson, plaintiff's mother, that he had made provisions for the plaintiff in his will and trust, specifying that plaintiff would not receive his share until age 35. Plaintiff is over 35 years of age at this time.

On January 21, 1977, Martin Wiswald and defendant Marquette National Bank executed a "Living Trust Agreement" identified as trust No. 7633. By the terms of the original trust, after a life income to his wife, defendant Josephine Wiswald, the settlor, Martin Wiswald, left 41.5% of the remainder to plaintiff, to be distributed to plaintiff after the death of Josephine Wiswald and upon plaintiff's attaining age 35.

Approximately four months later, on May 16, 1977, Wiswald executed his last will and testament in California as a resident of that State. By the terms of his will, the bulk of Wiswald's estate "poured over" into the Marquette National Bank trust No. 7633.

Two-and-a-quarter years later, on or about August 15, 1979, Wiswald was a patient at the Mayo Clinic in Minnesota. He was gravely ill, under medication, and maintained by artificial life support systems. Allegedly, while in this condition, Wiswald lacked mental ca-

pacity and was under the influence of certain defendants. Plaintiff's complaint alleges that Wiswald was wrongfully induced to execute a one-page document on accountant's columnar paper, which in hand-printed words and figures divests plaintiff of his entire beneficial interest in trust No. 7633 and divests defendant Jack Weber of his entire beneficial interest. This document, dated August 15, 1979, is incorporated into the pleadings. It redistributes Weber's and plaintiff's shares to other defendants. This purported amendment to the living trust agreement dated January 21, 1977, was prepared by either or both of Wiswald's accountants, who initiated, solicited and procured its execution. This amendment was accepted by defendant Marquette National Bank on August 20, 1979.

On January 21, 1977, when Martin Wiswald created the *inter vivos* trust, he designated the following beneficiaries:

| | |
|---|---|
| Jack Weber (employee of Wiswald's company): | 10% |
| Bonnie Stevens (employee of his accountants): | 2% |
| Max Dunn, Wiswald's personal and business attorney: | 5% |
| Norman Diamond, Wiswald's personal and business accountant: | 20.75% |
| Robert Scandora, Wiswald's personal and business accountant: | 20.75% |
| George Anderson III, Wiswald's nephew and treasurer of Wiswald's company: | 41.5% |

Plaintiff was the only beneficiary who was a blood relative. Diamond and Scandora have each been designated to receive 20.75%. This makes a total of 41.5%, which is equal to the 41.5% designated for Anderson. However, Anderson's share could be increased by an additional 10% if Weber did not continue in the employ of Martin Muffler, and an additional 2% if Stevens did not continue in the employ of Scandora and Diamond. Therefore, plaintiff's potential total benefit could be 53.5% of the trust. However, after the alleged August 15, 1979, amendment, the accountants, their employee, and the attorney are the beneficiaries of 100%, as reflected by the following chart:

| Beneficiary | Original Provision | 8/15/79 Amendment | Change |
|---|---|---|---|
| Jack Weber | 10% | -0- | -10% |
| Bonnie Stevens | 2% | 14% | +12% |
| Max Dunn | 5% | 20% | +15% |
| Norman Diamond | 20.75% | 33% | +12.25% |
| Robert Scandora | 20.75% | 33% | +12.25% |
| George Anderson | 41.50% | -0- | -41.50% |

Another alleged amendment surfaced. It is a three-page, typewritten document dated August 16, 1979, which purports to amend the trust and leave the settlor's business, Martin Muffler Sales, Inc., to Jack Weber, together with operating cash up to $25,000. This document is not signed by anyone, although it bears places for signatures of Wiswald as the trustor and Marquette National Bank and Wiswald as co-trustees.

Wiswald died on August 30, 1979. Nine days later, the co-trustees, Dunn, Stevens, Diamond, Scandora and Weber, executed a document which states that they "do hereby adopt and incorporate *** under TR No. 7633 the three (3) page unsigned amendment *** dated August 16, 1979 ***. In addition to the signed amendment of the trustor, dated August 15, 1979, said amendment, dated August 16, 1979, complies with oral directives of the trustor, Martin Wiswald, personally made to Robert Scandora on August 15, 1979 and confirmed by the trustor, Martin Wiswald, by telephone on said date to Max Dunn." Thus, we have the unusual circumstance of the trustor divesting Weber in writing and revesting Weber orally on the very same day.

At this pleading stage, we must accept as true the fact that Marquette National Bank, as trustee, was not notified of the purported oral amendment by Martin Wiswald, the trustor. The original trust document provided that the "Trustor reserves the power to modify, amend or revoke this agreement, *** by an instrument in writing signed by the trustor and received by the trustee during the Trustor's lifetime."

We have the bank trustee accepting without question as an amendment to the trust an instrument which is not "signed by the trustor" and which was not received by the bank trustee "during the Trustor's lifetime." These are facts alleged in the amended complaint and contained in the exhibits incorporated into the pleadings.

Wiswald's estate was probated at Palm Springs, California, and the estate assets were distributed in substantial part to defendants Marquette National Bank, Norman Diamond, and Robert Scandora,

as co-trustees of Marquette National Bank trust No. 7633. The trust documents were not a part of the probate proceedings. Despite plaintiff's frequent inquiries to the California probate attorney and to the defendants, plaintiff and his attorneys were not permitted to see any of the trust documents until January 28, 1986, more than five years after Wiswald's death, when the documents were produced by order of the trial court.

Plaintiff's amended complaint' alleges that the principal actors that initiated and successfully executed the alleged fraud are Wiswald's personal and corporate accountants, and personal and corporate attorney, who directly benefited by wrongfully inducing Wiswald to divert plaintiff's share to themselves. Defendant Stevens, an employee of the accountants, had a lesser role. Clearly, the accountants and attorney are fiduciaries. Stevens, as an employee of the accountants, is also in a fiduciary capacity.

Plaintiff's amended complaint also alleges that attorney Schlesinger of California was retained by the accountants, who were named co-executors in the will, to handle the California probate. A copy of the will is part of the record and it indicates that attorney Schlesinger most likely drafted the will because his personalized will form appears to have been used. He also is a witness to the will. The will refers to the Marquette National Bank trust No. 6733 and pours over the assets of the estate into the trust. This would indicate that Schlesinger had knowledge of the status of the trust. However, the allegations of the complaint state that he actively withheld information regarding the trust from the plaintiff. The trust documents were not a part of the California probate proceeding. Schlesinger is not named as a defendant in this proceeding.

Defendant Weber was divested on August 15, 1979. He was an employee of Wiswald. He did not receive any of the 41.5% taken from plaintiff on August 15, 1979. Even when he was allegedly revested under unusual circumstances, he did not take any of plaintiff's 41.5% since it was already appropriated by the other defendants.

In sum, the alleged principal wrongdoers are defendants Diamond, Scandora, Dunn and Stevens. Each of them was a fiduciary of Wiswald. Attorney Schlesinger drafted Wiswald's will, planned and handled the administration of his estate in California.

Defendants' joint motion to dismiss under section 2—619 is principally based on the argument that plaintiff's action was time barred under section 13—223 of the Code of Civil Procedure. Defendants assert that plaintiff's action had to be commenced within six months after Wiswald's will was admitted to probate in California on Octo-

ber 22, 1979. Therefore, the time to file expired on April 22, 1980. Plaintiff's initial complaint was not filed until May 22, 1985, and is obviously late. Defendants further argued that accepting plaintiff's allegations of fraud in the inducement, fraudulent concealment, undue influence, lack of mental and physical capacity, breach of fiduciary responsibility, and other acts of wrongdoing as true, these acts do not toll the six-month period limitation. The trial court agreed, stating:

> "[I]n my judgment 13—223 is not a limitation period in the general sense. Rather it is a limitation period only in the sense that 8—1 of the Probate Act is. And 8—1 of the Probate Act has, since 1887, been interpreted by the courts to be jurisdictional and not subject to enlargement, even on the grounds of fraudulent concealment.
>
> \* \* \*
>
> Having made these claims subject to the same rule as will contests, the legislature has made 13—223 jurisdictional and not subject to enlargement on the grounds of fraudulent concealment \* \* \*."

## I

■ Where a fiduciary benefits from a transaction with a client, there is a presumption of undue influence. (*In re Schuyler* (1982), 91 Ill. 2d 6, 16, 434 N.E.2d 1137.) The mere existence of a confidential relationship prohibits the dominant party from seeking any selfish benefit. (*Collins v. Nugent* (1982), 110 Ill. App. 3d 1026, 1036, 443 N.E.2d 277, *appeal denied* (1983), 93 Ill. 2d 541.) In the case at bar, defendants are fiduciaries who are alleged to have wrongfully diverted plaintiff's share of the trust to themselves. The question presented is whether the fiduciaries can be permitted to plead a six-month statute of limitation under section 13—223 as a jurisdictional bar to plaintiff's action.

Assuming that plaintiff was required to file his action within six months after the admission of the will to probate in California, should this provision be considered jurisdictional under the facts of this case?

Plaintiff alleges that if section 13—223 applies, it was tolled by the defendants' fraudulent concealment of plaintiff's cause of action.

Section 13—223 of the Code of Civil Procedure provides that "[a]n action to set aside or contest the validity of a revocable *inter vivos* trust agreement \* \* \* to which a legacy is provided by the settlor's will which is admitted to probate, shall be commenced

within *** the time to contest the validity of a will as provided in the Probate Act of 1975 as amended." (Ill. Rev. Stat. 1985, ch. 110, par. 13—223.) Section 8—1(a) of the Probate Act of 1975 as amended states that "[w]ithin six months after the admission to probate *** any interested person may file a petition *** to contest the validity of the will." Ill. Rev. Stat. 1985, ch. 110½, par. 8—1(a).

The only reported case referring to section 13—223 is *In re Estate of Chernyk* (1985), 138 Ill. App. 3d 233, 485 N.E.2d 1169, *appeal denied* (1986), 111 Ill. 2d 568. Plaintiff contends that the court's reference to section 13—223 as a "limitation provision" determines that it is not jurisdictional but is a limitation provision which can be tolled. The court said that "the dispositive issue" was whether an amended petition for a citation to recover assets may, for limitation purposes, relate back to the time of filing of a petition to discover assets under section 2—616(b) of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(b); *Chernyk*, 138 Ill. App. 3d at 235.) *Chernyk* is not helpful in determining the case at bar because limitation was not at issue and the reference to "limitation provision" was merely *dicta*.

On the other hand, all of the cases decided under section 8—1(a) of the Probate Act deal with domestic wills or foreign wills admitted to probate in Illinois. None of the cases deal with a "revocable *inter vivos* trust."

In the matter before us, we have a revocable *inter vivos* trust created in Illinois in January 1977; a will executed by the settlor (now a California resident) in California in May 1977 which pours over a substantial portion of the estate to the Illinois trust; and alleged amendments to the trust made in Minnesota in 1979 two weeks prior to settlor's death.

On October 22, 1979, Wiswald's will was admitted to probate in California. Plaintiff's first complaint was filed in Cook County more than five years later on May 22, 1985. It is undisputed that the Illinois Probate Act does not govern California probate actions. It is also undisputed that Illinois courts have adopted a harsh interpretation of the six-month period in cases involving wills admitted to probate in this State by holding that section 8—1 is jurisdictional and not subject to enlargement, even on the grounds of fraudulent concealment. (*Ruffing v. Glissendorf* (1968), 41 Ill. 2d 412, 243 N.E.2d 236; *Luther v. Luther* (1887), 122 Ill. 558, 13 N.E. 166.) This is due to the overriding public policy that there must be certainty in property rights created by a will admitted to probate. *Ruffing*, 41 Ill. 2d at 417.

In this case, plaintiff is not challenging the validity of Wiswald's will. In fact, he supports the will. Neither does the plaintiff challenge the validity of the revocable *inter vivos* trust created in January 1977. Plaintiff's challenge is directed to the August 15, 1979, amendment to the trust.

Section 8—1 of the Probate Act, as applied to wills admitted to probate in Illinois, has ample reason to be deemed jurisdictional. Other provisions of the Probate Act require that upon the death of the testator, anyone in possession of the testator's will shall file it with the clerk of the court of the proper county. Wilful failure to do so or wilful secretion, alteration or destruction subjects that person to penalties. (Ill. Rev. Stat. 1985, ch. 110½, par. 6—1.) There are provisions for notice to interested parties, requirements for the contents of the petition to admit the will, procedures for hearing witnesses or receiving affidavits of attesting witnesses, and the formal issuance of letters testamentary. (Ill. Rev. Stat. 1985, ch. 110½, par. 6—1 *et seq.*) This assures the heirs, legatees and interested parties of a full disclosure of the will and codicils, if any, and an opportunity to appear as a proponent or opponent. Thereafter, an order may be entered admitting the will to probate. Interested parties then have six additional months to challenge the validity of the will under section 8—1. Likewise, if an order is entered denying admission of the will to probate, any interested party may file a petition to challenge that order within six months under section 8—2. Thus, the Probate Act calls for filing of pertinent documents, notice, hearing, discovery and appeal in an open and orderly fashion where a will is involved.

However, section 13—223 is not a part of the Probate Act, but a part of the limitations article of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 13—223.) There is no corresponding provision in the Probate Act or Code of Civil Procedure which requires that "revocable *inter vivos* trusts to which a legacy is provided" must be filed in court as a public record, that notice of their contents or amendments be given to interested parties, or that they be subjected to proof of authenticity like a will under section 6—1 *et seq.* of the Probate Act (Ill. Rev. Stat. 1985, ch. 110½, par. 6—1 *et seq.*).

In this case, the original trust and amendments were not made a part of the California probate proceeding. We must accept the well-pleaded allegations of the complaint and conclude that there was a concerted effort to keep the plaintiff uninformed. In fact, the defendants moved to dismiss plaintiff's original complaint on the ground that he had not standing to sue because he was not a beneficiary of

the trust, while they kept that fact secret from him. Plaintiff's complaint was filed at the risk of incurring sanctions because he lacked adequate information. It was only after the trial court ordered defendants to disclose the trust documents, over their strenuous objection, that plaintiff and his attorneys had adequate information to formulate an adequate pleading to state a cause of action.

■ We conclude that under the facts of this case, the reference to the six-month limitation period of the Probate Act in section 13—223 does not carry with it the jurisdictional aspect of the Probate Act. The reference is merely to a time frame from which to commence the running of a limitation period (admission of the will to probate) and the duration of that time (six months). Since trust beneficiaries affected by section 13—223 are not afforded the protection given to heirs and legatees under section 6—1 *et seq.* of the Probate Act, the six-month period of limitation is subject to enlargement.

Cases involving fiduciaries must be considered by more stringent standards. Fiduciaries are granted privileges to practice their professions through legally established licensing procedures. Summarily dismissing the action under the facts alleged in this case would encourage those in a confidential relationship who are disposed to betray their clients to do so, then engage in delaying or cover-up tactics for six months and be secure from accountability by the victim. The legislature did not intend that section 13—223 be a vehicle for fiduciaries to avoid their responsibilities.

Code pleading was adopted in this State because procedural pitfalls of common law pleading often denied litigants an opportunity to have their differences determined on the merits. (*Miller v. Enslen* (1978), 60 Ill. App. 3d 865, 868, 377 N.E.2d 282.) The Code of Civil Procedure applies to probate proceedings. (Ill. Rev. Stat. 1985, ch. 110½, par. 1—6.) The Code provides that "[t]his Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." Ill. Rev. Stat. 1985, ch. 110, par. 1—106.

We therefore conclude that the six-month period incorporated by reference into section 13—223 is not jurisdictional and is subject to enlargement in a proper case.

II

■ Having determined that section 13—223 is a limitation rather than a jurisdictional provision, we must now decide whether, under the facts of this case, the six-month limitation period can be properly enlarged to make plaintiff's action timely.

The decedent's will was admitted to probate on October 22, 1979. Plaintiff's action was filed more than five years later. Do the facts alleged by the plaintiff justify the tolling of the limitation period? If the defendants fraudulently concealed the cause of action from the plaintiff, the statute of limitation does not begin to run until the fraud is discovered, or until the time the fraud could have been discovered by the exercise of reasonable diligence. 25 Ill. L. & Prac. *Limitations* §62 (1956).

Plaintiff's action was commenced on information and belief because essential information was withheld by the defendants. As previously stated, defendants sought to dismiss the action because the plaintiff was not a beneficiary and lacked standing to sue while withholding such information from the plaintiff. Based on the well-pleaded facts which we are bound to accept, we conclude that defendants fraudulently concealed the cause of action from the plaintiff and that plaintiff and his attorneys, in spite of their diligence, did not discover plaintiff's cause of action until January 28, 1986, when the trial court ordered defendants to disclose the trust documents and amendments. Therefore, plaintiff's action was timely.

### III

We express no opinion as to the ultimate outcome of this litigation. For the purposes of this opinion, we are required to accept plaintiff's well-pleaded facts as true. After the defendants have an opportunity to file responsive pleadings, the plaintiff will be required to prove the facts which were admitted only for the purpose of disposing of the motion to dismiss.

Accordingly, the order of the circuit court of Cook County dismissing plaintiff's action with prejudice is reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.