JOHN MORRISSEY, Special Adm'r of the Estate of Susan Morrissey, Deceased, *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (6th Division)    No. 1—01—3371

Opinion filed September 13, 2002.

252

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal,

Benna Ruth Solomon, and Emily Paster, Assistant Corporation Counsel, of counsel), for appellant.

Power, Rogers & Smith, P.C., of Chicago (Joseph A. Power, Jr., and Joseph W. Balesteri, of counsel), for appellees.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiffs John Morrissey and Rosa Herrera brought wrongful death actions against the City of Chicago (the City) seeking to recover damages in connection with the deaths of Susan Morrissey and Juan Manuel Herrera, Sr. On January 31, 1997, Susan Morrissey and Juan Manuel Herrera, Sr., were killed as the result of a two-vehicle collision in the 7300-7700 block of South Kedzie Avenue in the City of Chicago. The fatal collision occurred after Susan Morrissey lost control of her vehicle and crossed the center line of traffic, hitting the vehicle in which Juan Manuel Herrera, Sr. was a passenger. Plaintiffs allege that the cause of the loss of control and subsequent collision was the City's failure to maintain the roadway in a reasonably safe condition by, among other things, failing to warn of or to repair potholes. The City moved for summary judgment on plaintiffs' claims, asserting, among other things,[1] that it was immune from liability pursuant to certain sections of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which included sections 2—201 and 3—102(a) (745 ILCS 10/2—201, 3—102(a) (West 1994)). On August 2, 2001, following a hearing, the circuit court denied the City's motion for summary judgment, finding that questions of fact existed as to (1) whether the City's acts were discretionary or ministerial in the present case and (2) whether the City had constructive or actual notice under the immunity provisions of the Tort Immunity Act. On September 5, 2001, however, after considering a joint motion of the parties, the court certified the following question for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

"Is a municipality immune from liability under section 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act when the municipality is sued for breaching the duty to maintain a public roadway in a reasonably safe condition?"

On October 9, 2001, this court allowed the City's petition for leave to appeal. Oral arguments were heard on June 13, 2002. For the reasons that follow, we now dismiss this appeal.

■ A local governmental entity is liable in tort on the same basis

---

[1] Those matters were unrelated to the subsequently certified question.

as a private tortfeasor unless a valid statute dealing with tort immunity imposes limitations upon that liability. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 345, 692 N.E.2d 1177, 1182-83 (1998). Section 2—201 of the Tort Immunity Act provides:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1998).

Section 3—102(a) of the Tort Immunity Act provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102 (West 1998).

The parties disagree as to how these relevant statutes should be interpreted with respect to the instant case. Plaintiffs apparently take the position that the express codification by the legislature of the duty to maintain property under section 3—102(a) rendered ministerial, as a matter of law, the alleged acts of negligence here, such that the immunity of section 2—201 could never apply. The City apparently takes the diametrically opposed position that, despite the duty to maintain its property, it is entitled to absolute immunity regarding all of its decisions regarding pothole repair, *i.e.*, when, where, how and whether to repair a pothole, because all involve both a policy determination and the exercise of discretion and fall squarely within the immunity provided under section 2—201.[2]

■ Our supreme court has often stated that the Tort Immunity Act is "in derogation of the common law" and must be strictly construed against the local government entity. See *Snyder v. Curran Township*, 167 Ill. 2d 466, 477, 657 N.E.2d 988, 994 (1995); *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 651 N.E.2d 1115 (1995); *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208, 608 N.E.2d 882 (1993);

---

[2]During oral argument, however, the City conceded that a ministerial duty might be breached where a crew worker is told to fill a pothole but, instead, goes to the racetrack.

*Aikens v. Morris,* 145 Ill. 2d 273, 278, 583 N.E.2d 487, 490 (1991). Although the immunities afforded to units of local government under the Tort Immunity Act, including the immunity pursuant to section 2—201, may preclude a plaintiff's right to recover damages, each immunity operates as an affirmative defense that must be properly raised and proven by the public entity. *Michigan Avenue National Bank v. County of Cook,* 191 Ill. 2d 493, 503, 732 N.E.2d 528, 535 (2000).

The City asserts in its brief that "the circuit court erred in recognizing an exception to section 2—201's discretionary immunity *whenever* a local government is alleged to have breached its duty to maintain the public roadway in a reasonably safe condition." (Emphasis added.) Contrary to the City's characterization of the trial court's decision, our review of the transcript of the hearing on defendant's motion for summary judgment shows that the trial court, in denying summary judgment, instead determined that questions of fact existed as to whether the present case involved decisions which could be characterized as ministerial or discretionary, which is the relevant inquiry regarding the applicability of section 2—201. In fact, the trial court noted that there was nothing in the testimony before it which indicated that anyone had in fact even made any "decision" with respect to this particular hole. Where questions of fact exist regarding the distinction, grants of summary judgment have been held to be error. *Courson v. Danville School District No. 118,* 301 Ill. App. 3d 752, 704 N.E.2d 447 (1998).

In *Courson,* a student was injured during class while using a saw with the safety guard removed. The court noted the distinction between situations involving the making of a policy choice and the exercise of discretion and situations involving some oversight or mere inadvertence. *Courson,* 301 Ill. App. 3d at 757-58, 704 N.E.2d at 451. The court held that factual questions existed as to whether the removal of the guard was an exercise of discretion, in which case immunity might apply, or simply an oversight, in which case the omission would not be immunized. Thus, because the defendant district, by failing to establish that the omission there was a discretionary act, had not met its burden of proof, the motion for summary judgment should have been denied. *Courson,* 301 Ill. App. 3d at 758, 704 N.E.2d at 451; see also *Roark v. Macoupin Creek Drainage District,* 316 Ill. App. 3d 835, 841, 738 N.E.2d 574 (2000) (concluding that issue of whether a defendant's decision *not* to repair a drainage system was discretionary or ministerial presented a question of fact).

More recently, in *Anderson v. Alberto-Culver USA, Inc.,* 317 Ill. App. 3d 1104, 740 N.E.2d 819 (2000), this court reversed a trial court's grant of summary judgment to municipal defendants on grounds of

governmental immunity where factual questions remained. As the court explained:

"[P]laintiffs may very well succeed in demonstrating that municipal defendants failed to use ordinary care in maintaining [their property] in a reasonably safe condition. Every failure to maintain property could be described as an exercise of discretion under municipal defendants' expansive approach to governmental immunity. The legislature could not have intended such a result; otherwise, it would not have codified the common law duty to maintain property under section 3—102 of the [Tort Immunity] Act. The [Tort Immunity] Act must be strictly construed against the public entity involved. [Citation.]

Accordingly, *summary judgment may not be entered where there is a material fact question of whether public property was maintained in conformity with applicable safety standards \*\*\*.*" (Emphasis added.) *Anderson*, 317 Ill. App. 3d at 1117, 740 N.E.2d at 829.

Plaintiffs, relying in part on *Anderson*, assert that "when a municipality has the duty to repair, the routine maintenance of a public roadway via pothole repair is a ministerial act." In *Anderson*, the court stated as follows:

"Plaintiffs allege that municipal defendants failed to maintain the RSA[3] in a reasonably safe condition as provided in section 3—102, in contrast to having failed to make an improvement to the RSA. A statutory provision concerned with public rights-of-way defines 'maintain' and 'maintenance' as '[t]he performance of all things necessary to keep a highway in serviceable condition for vehicular traffic.' 605 ILCS 5/2—214 (West 1998). This definition is supported by the ordinary dictionary definition, that to maintain is 'to keep in a state of repair, [or] efficiency.' Webster's Third New International Dictionary 1362 (1993). 'Improvement,' on the other hand, is defined as a permanent addition to or betterment of real property that enhances its capital value; it involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs. Webster's Third New International Dictionary 1138 (1993). *To maintain property is considered a ministerial act*; to improve property falls under the discretionary decision of the government entity." (Emphasis omitted and added.) *Anderson*, 317 Ill. App. 3d at 1112-

---

[3]"RSA" stands for "Runway Safety Area," and is a term used by the Federal Aviation Administration to refer to the area surrounding a runway designed to enhance the safety of airplanes which undershoot, overrun or veer off the runway, and it provides greater accessibility for firefighting and rescue equipment during such incidents.

13, 740 N.E.2d at 826, citing *Koltes v. St. Charles Park District*, 293 Ill. App. 3d 171, 176, 687 N.E.2d 543 (1997), and *Kennell v. Clayton Township*, 239 Ill. App. 3d 634, 640-42, 606 N.E.2d 812 (1992).

The City contends that *Anderson* is distinguishable because it involved specific safety standards of the Federal Aviation Administration with which the municipal defendants were required to comply, whereas the present case involves no binding statute, regulation, or policy mandating how crew supervisors are to assign their crews. The City acknowledges, however, that a municipality is not immune from liability for the performance of ministerial tasks. See, *e.g.*, *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 194, 680 N.E.2d 265, 272 (1997), citing *City of Chicago v. Seben*, 165 Ill. 371, 377-78, 46 N.E. 244 (1897) (in which, although discussing public improvements, the court explained that a municipality's selection and adoption of a plan may be discretionary but, as soon as the entity begins to carry out that plan, it acts ministerially).

■ Our supreme court has explained that it "has long recognized that the distinction between discretionary and ministerial functions resists precise formulation, and that the determination whether acts are discretionary or ministerial must be made on a case-by-case basis." *Snyder v. Curran Township*, 167 Ill. 2d 466, 474, 657 N.E.2d 988, 992-93 (1995), citing *Johnston v. City of Chicago*, 258 Ill. 494, 497, 101 N.E. 960 (1913), and *Johnston v. City of East Moline*, 405 Ill. 460, 466, 91 N.E.2d 401 (1950). "Discretion" connotes a conscious decision. *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768, 670 N.E.2d 350, 353 (1996). As the trial court noted, questions of fact remain on the issue of whether the City actually made a conscious decision that would entitle it to discretionary immunity regarding the alleged failure to repair the pothole in question.

■ Illinois Supreme Court Rule 308 provides in pertinent part:
"When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved." 155 Ill. 2d R. 308(a).
Supreme Court Rule 308 is an exception to the general rule that only final orders from a court are subject to appellate review. Rule 308, governing permissive interlocutory appeals, was intended to be used sparingly; it was not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. *Camp v. Chicago Transit Authority*, 82 Ill. App. 3d 1107, 403 N.E.2d 704 (1980).

Thus, "[a]ppeals under Rule 308 should be limited to certain 'exceptional' circumstances; the rule should be strictly construed and sparingly exercised." *Voss v. Lincoln Mall Management Co.*, 166 Ill. App. 3d 442, 445, 519 N.E.2d 1056 (1988). After now reviewing the briefs and the record in this case, conducting our independent research and allowing oral arguments, we do not believe the interlocutory order involves a question of law as to which there is a substantial ground for difference of opinion or that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

■ In *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 693 N.E.2d 358 (1998), the Illinois Supreme Court declined to answer a certified question where, as here, factual issues remained. The court stated as follows:

"Although the matter is framed as a question of law, we believe that any answer here would be advisory and provisional, for the ultimate disposition *** will depend on the resolution of a host of factual predicates. For proof that factual issues remain, we need look no further than the trial judge's ruling on the defendants' motion for summary judgment on this count: in denying the motion, the trial judge stated that issues of material fact remained, which precluded entry of summary judgment." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d at 469, 693 N.E.2d at 363-64.

We believe that the same principle applies to the certified question here. The certified question, as phrased, necessarily involves factual considerations and can only be answered equivocally. The basis of the trial court's denial of summary judgment, in the instant case, was the existence of material questions of fact. The trial court's order does not involve a question of law as to which there is substantial ground for difference of opinion. Thus, the City's assertion that the court, in denying its motion for summary judgment, erred in recognizing an exception to section 2—201's discretionary immunity *whenever* a local government is alleged to have breached its duty to maintain the public roadway in a reasonably safe condition mischaracterizes the trial court's order. Any answer we could give to the certified question would be equivocal, as well as "advisory and provisional." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d at 469, 693 N.E.2d at 363-64; *Arriola v. Time Insurance Co.*, 323 Ill. App. 3d 138, 152, 751 N.E.2d 221, 232 (2001); see also *Courson*, 301 Ill. App. 3d at 758, 704 N.E.2d at 451 ("It is not clear how the supreme court would reconcile sections 2—201 and 3—102, but we need not decide that question now. It is sufficient to note that the District is not entitled to summary judgment, because it has not established that the failure to provide the saw guard was a discretionary act"). Therefore, we now vacate our order of October 9,

2001, allowing this interlocutory appeal. The City's petition for leave to appeal is denied and this appeal is dismissed.

Appeal dismissed.

O'BRIEN, P.J., and BUCKLEY, J., concur.