# ILLINOIS OFFICIAL REPORTS
## Appellate Court

---

*In re Estate of Luccio*, 2012 IL App (1st) 121153

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF BENJAMIN LUCCIO, Deceased (Rocco Lucio, John Lucio, Patricia Chiarello, Danielle Morey, Niccole Morey, Amanda Morey, Beneficiaries Under a Prior Trust, and Tina Norton, as Mother and Legal Guardian of Kaylee Norton, Beneficiary Under a Prior Trust, Plaintiffs-Appellees, v. Khristian Rao, Individually and as Beneficiary Under the Sixth Amendment to the Benjamin Luccio a/k/a Bernardino Luccio, Declaration of Trust Dated January 12, 2001, Defendant-Appellant (St. Jude's Children's Research Hospital, Beneficiary Under the Sixth Amendment to the Benjamin Luccio, a/k/a Bernardino Luccio, Declaration of Trust Dated January 12, 2001, and ATG Trust Company, as Trustee of the Benjamin Luccio, a/k/a Bernardino Luccio, Declaration of Trust Dated January 12, 2001, Defendants)). |
| District & No. | First District, Second Division <br> Docket No. 1-12-1153 |
| Filed | December 18, 2012 |
| Held <br><br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In answer to a certified question, the appellate court ruled that the six-month limitations period in section 8-1(f) of the Probate Act for bringing a contest to the validity of a trust that receives a legacy from a will admitted to probate does not apply to a tort action for intentional interference with an inheritance expectancy, but if a trust contest is "available" to a litigant, and he is "aware" of his legacy, but agrees to take no action in exchange for a settlement, then he cannot later bring a tort action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 09-P-7737, 10-CH-46854 cons.; the Hon. James G. Riley, Judge, presiding. |

| Judgment | Certified question answered; cause remanded. |
|---|---|
| Counsel on Appeal | Peter J. Schmiedel, Robert W. Kaufman, and Amanda M. Byrne, all of Fischel & Kahn, Ltd., of Chicago, for appellant. |
| | Andrew T. Hays, of Hays Firm LLC, of Chicago, for appellees. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Presiding Justice Harris and Justice Quinn concurred in the judgment and opinion. |

## OPINION

¶ 1     Plaintiffs filed a complaint in the chancery division against defendant Khristian Rao, among others, for intentional interference with an inheritance expectancy and breach of fiduciary duty in a matter involving a testamentary trust. The case was then transferred to the probate division and consolidated with a pending action involving the estate of the decedent, Benjamin Luccio. Rao moved to dismiss the claims against her as time-barred under section 8-1(f) of the Probate Act of 1975 (Act) (755 ILCS 5/8-1(f) (West 2008)). The circuit court denied the motion to dismiss. After also denying Rao's motion to reconsider, the court certified the following question for interlocutory appeal under Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010):

> "Does the six[-]month limitations period of 755 ILCS 5/8-1(f) for bringing a contest to the validity of a trust that receives a legacy from a will admitted to probate apply to a tort action, including an action for [i]ntentional [i]nterference with an [i]nheritance [e]xpectancy where, unlike a will that has been admitted to probate, the trust instrument and amendments thereto are not publicly filed or otherwise made available to tort claimants who were to have received a benefit from a prior version of the trust or an amendment thereto?"

On May 25, 2012, a different division of this court allowed the interlocutory appeal. For the reasons that follow, we answer the certified question in the negative, with qualification.

¶ 2                                    BACKGROUND

¶ 3     The following facts were taken from plaintiffs' first amended complaint. On January 12, 2001, the decedent executed the "Benjamin Luccio, a/k/a Bernardino Luccio, Declaration of Trust Dated January 12, 2001" (Trust). The second amendment to the decedent's Trust, executed in 2007, gave the balance of a bank account to his nephew, specific monetary gifts to his niece and grandchildren, and the balance of the residuary trust estate to his brother.

¶ 4    In September of 2008, the decedent hired Rao to provide in-home medical care for his ailing wife, Maxine. Rao allegedly accompanied the decedent to his bank to retrieve some financial documents from a safety deposit box before visiting an attorney "in order to amend [the d]ecedent's estate plan." Rao then transported Maxine to her home in Arkansas against the advice of Maxine's doctors.

¶ 5    Over the next few months, the decedent began to exhibit signs of dementia. Although the decedent had been paying Rao for Maxine's medical care, he also allegedly transferred $130,000 to Rao in December of 2008. In January of 2009, the decedent retained an attorney recommended by Rao to amend his Trust. The third amendment gave the decedent's house to his daughter, Tina Norton,[1] and the balance of his residuary trust estate to Rao. Two weeks later, the decedent executed a fourth amendment to his Trust, adding a monetary bequest to his nephew.

¶ 6    In March of 2009, the decedent was diagnosed with advanced dementia and required around-the-clock medical care. Around the same time, Maxine died. Rao then moved from Arkansas into the decedent's home to provide him with in-home medical care.

¶ 7    A couple of weeks later, the decedent executed a fifth amendment to his Trust. In it, he gave a monetary gift to a children's research hospital, he gave his house to his nephew, and the balance of the residuary trust estate was to be divided equally between Rao and three of the decedent's relatives. In June of 2009, the decedent executed a sixth amendment to his Trust, which gave a monetary gift to the hospital and the balance of the residuary trust estate to Rao.

¶ 8    Shortly thereafter, Rao moved the decedent to her home in Arkansas without telling his family. The decedent's family members located him a couple of months later in Arkansas. Rao allegedly "cut off communications between the [d]ecedent and his relatives, telling the [d]ecedent that they no longer cared for him." While in Rao's care, the decedent broke his hip and during the surgery to repair it, he suffered a heart attack. Norton tried to make arrangements to visit the decedent, but was told that he had left the hospital. Rao did not return any of Norton's phone calls. Finally, Rao informed Norton by email that the decedent died on November 5, 2009.

¶ 9    Rao later told Norton that the decedent's Trust was being administered by ATG Trust Company, which was represented by attorney James Kash. Norton contacted Kash to get copies of the will and trust documents, but he allegedly refused to provide her with those documents.

¶ 10    On October 28, 2010, plaintiffs filed a lawsuit in the chancery division against Rao, ATG, and the children's hospital. Counts I and II sought to set aside the Trust because the decedent lacked capacity to execute the third, fourth, fifth, and sixth amendments to the Trust and because the amendments were procured through undue influence. Counts III and IV were

---

[1]Tina Norton is not a plaintiff in this case, but appears in the caption as the mother and legal guardian of plaintiff Kaylee Norton. As the sole heir of the decedent's estate, Tina Norton filed an unsuccessful petition to set aside the admission of the will to probate. However, none of the probate orders are involved in this interlocutory appeal.

directed at Rao, alleging that she intentionally interfered with plaintiffs' inheritance expectancy when she induced the decedent to amend the Trust and that she breached her fiduciary duty to the decedent. Count V sought to enjoin ATG from disbursing any funds or assets under the terms of the Trust.

¶ 11 The case was transferred to the probate division and was consolidated with the pending probate matter. The defendants each moved to dismiss the complaint as time barred under section 8-1(f) of the Act. The court dismissed counts I and II with prejudice, but permitted plaintiffs to amend the remaining counts.

¶ 12 Plaintiffs then submitted their first amended complaint, which is at issue in this case. Count I again alleges that Rao intentionally interfered with plaintiffs' inheritance expectancy. Plaintiffs asserted that they were beneficiaries under prior versions of the Trust and that Rao unduly influenced the decedent to "transfer large sums of money and/or stocks to her during [the d]ecedent's lifetime. These transfers included funds from checking accounts, savings accounts, brokerage accounts and certificates of deposit." They alleged that but for Rao's interference, they would have inherited from an estate worth more than $1.5 million, which was its value before Rao induced the decedent to transfer his assets to her. Count II asserted a claim for breach of fiduciary duty against Rao, alleging that she used her relationship with the decedent to force him to execute the third, fourth, fifth, and sixth amendments to the Trust and appropriate his assets for her own benefit. Count III of the amended complaint was directed at ATG, seeking to enjoin it from disbursing any assets under the Trust.

¶ 13 Rao again filed a motion to dismiss the complaint, arguing that the tort claims were barred by section 8-1. After oral argument on the motion, the court issued a written opinion. It recounted that the Trust is the sole legatee of the will that was admitted to probate. It noted that plaintiffs' complaint does not contest the validity of the decedent's will or the Trust; rather, it seeks a personal judgment against Rao for her tortious interference with the plaintiffs' inheritance expectancy. It further noted that although the will had been filed with the court, distributed to all heirs and legatees, and become a public document pursuant to the Act, the Trust had not because Illinois law does not require the same disclosure of trust documents. Accordingly, the court stated, there is "a huge gap in how we treat a will contest versus trust contests yet both are subject to the same six[-]month statute of limitation." The court also noted that plaintiffs requested copies of the will and Trust from Kash, the estate's attorney, and ATG, the trustee, but the documents were "not forthcoming in a timely manner."

¶ 14 The court then denied Rao's motion to dismiss and allowed the tort claims to proceed based on the following findings. Plaintiffs were not entitled to a copy of the Trust because they were not named beneficiaries. Under these circumstances, the court concluded that plaintiffs would have to have filed a lawsuit against the trustee to obtain a copy of the Trust in order to discover whether they could have brought suit to challenge the Trust, all within the six-month time frame for filing a trust contest under section 8-1(f) of the Act. The court found that process to be "unduly burdensome" and contrary to the public policy of ensuring "an orderly settlement of estates." It also concluded that a will contest would not have benefitted plaintiffs because the decedent's will was a "pour over" will that transferred his residual estate into the Trust, as did the prior version of his will; thus, the decedent's residual

-4-

estate would have been governed by the terms of the Trust regardless of which version of the will was admitted to probate. Additionally, plaintiffs sought to recover the value of allegedly fraudulent *inter vivos* transfers the decedent made to Rao, which relief cannot be obtained in a will contest proceeding. Thus, the court concluded that plaintiffs were not required to file a will contest within six months of the will being admitted to probate pursuant to section 8-1 and could proceed with their tort claim.

¶ 15    Rao filed a motion to reconsider, citing our recent opinion in *Bjork v. O'Meara*, 2012 IL App (1st) 111617, in support.[2] The court denied the motion to reconsider but certified the question that is the subject of this appeal. This court granted Rao's application for interlocutory appeal.

¶ 16                                                  ANALYSIS

¶ 17    We begin with a recitation of the scope of review we apply to Rule 308 appeals. Generally, courts of appeal have jurisdiction to review only final judgments entered in the trial court, absent a statutory exception or rule of the supreme court. *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008). Supreme Court Rule 308 provides one such exception. Rule 308 allows for permissive appeal of an interlocutory order certified by the trial court as involving a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal may materially advance the ultimate termination of the litigation. Ill. S. Ct. R. 308 (eff. Feb. 26, 2010); *Brookbank v. Olson*, 389 Ill. App. 3d 683, 685 (2009). However, the rule was not intended to be a mechanism for expedited review of an order that merely applies the law to the facts of a particular case. *Walker*, 383 Ill. App. 3d at 133; *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 258 (2002). Nor does it permit us to review the propriety of the order entered by the lower court. *Walker*, 383 Ill. App. 3d at 133. Rather, we are limited to answering the specific question certified by the trial court to which we apply a *de novo* standard of review. *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9.

¶ 18    Initially, we note that the certified question presents a case of first impression. Although the Act as a whole reflects the long-standing principles of probate law and the process for the orderly settlement of estates (*Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174, 186 (1983)), subsection (f) of the Act, which governs a challenge to the validity of a revocable *inter vivos* trust that receives a legacy from a will, has yet to be construed by Illinois courts. Until 1995, such challenges to testamentary trusts proceeded under section 13-223 of the Code of Civil Procedure (Code).[3] 735 ILCS 5/13-223 (West 2008). However, as part of a larger legislative enactment, the language of section 13-223 was added to the Act verbatim and, along with some additional statutory references, became subsection (f). See

---

[2]On May 30, 2012, the Illinois Supreme Court allowed the petition for leave to appeal in *Bjork*. *Bjork v. O'Meara*, 2012 IL App (1st) 111617, *appeal allowed*, No. 114044 (Ill. May 30, 2012). The case was argued before the supreme court on November 20, 2012.

[3]We render no opinion on the continuing applicability of section 13-223.

Pub. Act 89-364 (eff. Aug. 18, 1995) (adding 755 ILCS 5/8-1(f)).

¶ 19    The language of subsection (f) reads as follows:

"An action to set aside or contest the validity of a revocable inter vivos trust agreement or declaration of trust to which a legacy is provided by the settlor's will which is admitted to probate shall be commenced within and not after the time to contest the validity of a will as provided in subsection (a) of this Section [(755 ILCS 5/8-1(a) (West 2008))] and Section 13-223 of the Code of Civil Procedure [(735 ILCS 5/13-223 (West 2008))]." 755 ILCS 5/8-1(f) (West 2008).

The reference to subsection (a) of the Act imposes a requirement that any such challenge to the validity of the trust be filed within six months of the accompanying will's admission to probate. 755 ILCS 5/8-1(a) (West 2008); *In re Estate of Ellis*, 236 Ill. 2d 45, 50 (2009).

¶ 20    The six-month limitation period in subsection (a) has long been recognized as a jurisdictional limitation barring any claims filed beyond that period. *Ellis*, 236 Ill. 2d at 50. However, we have previously characterized the limitation period of a testamentary trust contest under section 13-223 as administrative and not jurisdictional. *Anderson v. Marquette National Bank*, 164 Ill. App. 3d 626, 634-35 (1987) (noting that section 13-223 merely prescribes the commencement of the limitations period and its duration). In *Anderson*, we concluded that because section 13-223 is part of the Code, it should be liberally construed to protect against the procedural pitfalls of common law pleading that often deny litigants an opportunity to have their disputes heard on the merits. *Anderson*, 164 Ill. App. 3d at 635. On the other hand, we said that the limitation period in the Act is jurisdictional, and justifiably so, because as a whole, it contains very specific notice provisions that require strict adherence. *Anderson*, 164 Ill. App. 3d at 633-34. Thus, we held, section 13-223 "does not carry with it the jurisdictional aspect of the *** Act." *Anderson*, 164 Ill. App. 3d at 635. Although we need not construe section 13-223 for purposes of this appeal, we note that the analysis underlying our holding in *Anderson* must be revisited to reflect the change that the legislature made to include testamentary trust contests within the statutory organization of the Act. Nevertheless, because subsection (f) is part of the Act, it must be construed as a jurisdictional limitation, as subsection (a) has long been construed.

¶ 21    Turning to the question at issue, whether the six-month jurisdictional limitation period in subsection (f) applies to a claim for intentional interference with an inheritance expectancy involving a trust that receives a legacy from a will admitted to probate, we begin with the familiar rules of statutory construction. Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Ellis*, 236 Ill. 2d at 50. All other rules of statutory construction are subordinate to this principle. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). The best evidence of legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Ellis*, 236 Ill. 2d at 50. Where the statutory language is clear and unambiguous, we may not depart from its plain meaning by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Ellis*, 236 Ill. 2d at 51.

¶ 22    Subsection (f) applies to "[a]n action to set aside or contest the validity" of a trust receiving a legacy from a will. An "action" has been defined as

"an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right [or] the redress or prevention of a wrong ***. *** More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." Black's Law Dictionary 28-29 (7th ed. 1999) (quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)).

See also *7-Eleven, Inc. v. Dar*, 325 Ill. App. 3d 399, 406 (2001). By its plain terms, subsection (f) applies to any ordinary judicial proceeding prosecuted by one party against another to "set aside or contest the validity" of a trust, whether it be a quasi *in rem* proceeding or another type of proceeding that would have the same effect. See *Pernod v. American National Bank & Trust Co. of Chicago*, 8 Ill. 2d 16, 20 (1956) (noting that a "voluntary trust may be set aside only upon a showing that it was induced by fraud, duress, undue influence or mistake"); see also *Ellis*, 236 Ill. 2d at 51 (identifying a will contest as a quasi *in rem* proceeding the object of which is to set aside a will). The trust itself is a " 'fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' " (Emphasis omitted.) *Eychaner v. Gross*, 202 Ill. 2d 228, 253 (2002) (quoting Restatement (Second) of Trusts § 2 (1959)).

¶ 23    However, as our supreme court recently made clear, in this context specifically, a claim for intentional interference with an inheritance expectancy is not an action to "set aside or contest the validity" of a trust. *Ellis*, 236 Ill. 2d at 52. Rather, it is a "personal action [in tort] directed at an individual tortfeasor." *Ellis*, 236 Ill. 2d at 52. Although the tort action may rely on the same evidence presented in a trust contest, the key inquiries in the tort action are: "(1) the existence of an expectancy; (2) defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages." *Ellis*, 236 Ill. 2d at 52. The remedy is a personal judgment against the individual defendant, which may be a money judgment or the imposition of a constructive trust or equitable lien where the defendant wrongfully received the legacy. *Ellis*, 236 Ill. 2d at 52. On the other hand, a trust contest is a challenge to the validity of the document creating it and the remedy in a trust contest is the setting aside of the trust. See *Pernod*, 8 Ill. 2d at 20; see also *Ellis*, 236 Ill. 2d at 51. As such, a tortious interference claim is not "an action to set aside or contest the validity of" a trust under the plain language of subsection (f). See *Ellis*, 236 Ill. 2d at 53. Although *Ellis* involved the setting aside of a will as opposed to a trust, the court's rationale is equally applicable here because, under the Restatement (Second) of Trusts, "[t]he law governing the effect of fraud, duress, undue influence[,] and mistake upon testamentary dispositions is applicable to testamentary trusts." Restatement (Second) of Trusts § 333 cmt. a (1959). See also *In re Estate of Boyar*, 2012 IL App (1st) 111013, ¶ 30.

¶ 24    Ellis went on to reconcile the plain language of subsection (a) with an earlier case in which the court barred a tortious interference claim "where a plaintiff foregoes an opportunity to file a [tortious interference] claim within the six-month period for a will contest." *Ellis*, 236 Ill. 2d at 53. In *Robinson v. First State Bank of Monticello*, the court

applied the limitation period to bar a tortious interference claim filed more than six months after the will had been admitted to probate, notwithstanding the plain language of the statute. *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174 (1983). However, the key consideration in that case was the fact that "the plaintiffs *** engaged an attorney to determine whether they should file a will contest, *** decided not to contest the will, [and] entered into a settlement agreement [with the estate] for $125,000." *Robinson*, 97 Ill. 2d at 184. In exchange for that cash settlement, the plaintiffs "allowed the statutorily prescribed period in which to contest the will expire (thereby establishing the validity of the will)." *Robinson*, 97 Ill. 2d at 184. Several months later, the plaintiffs filed a complaint for intentional interference with an inheritance expectancy seeking an additional recovery.

¶ 25    The court refused to allow the claim to proceed, reasoning that "if we were to allow the plaintiffs to maintain their tort action, we would be giving them a second bite of the apple and defeating the purpose of the exclusivity of a will contest under section 8-1." *Robinson*, 97 Ill. 2d at 185. Allowing the plaintiffs to maintain the tort action under those circumstances would have had the "practical effect" of invalidating a will that had become valid by operation of law. *Robinson*, 97 Ill. 2d at 186; *Ellis*, 236 Ill. 2d at 54.

¶ 26    However, *Ellis* cautioned that *Robinson* "must be read in the context of the facts of that case." *Ellis*, 236 Ill. 2d at 54. *Ellis* made clear that in *Robinson*, the relief afforded by the Act was "available" to the plaintiffs but they chose not to avail themselves of it. That is, the plaintiffs knew that the will had been admitted to probate, they hired an attorney to evaluate the wisdom of setting aside the will, but ultimately chose to settle their dispute by taking a cash settlement and foregoing any further claims arising from the will and codicil. *Ellis*, 236 Ill. 2d at 54; *Robinson*, 97 Ill. 2d at 185. Thus, the "holding in *Robinson* was limited to not recognizing the tort action where plaintiffs have an opportunity to contest a probated will but choose not to do so, and subsequently enter into an agreement to take no further court action." *Ellis*, 236 Ill. 2d at 54.

¶ 27    In contrast, the court concluded, where a will contest remedy is not "available" to a litigant, that litigant may proceed with a tortious interference claim. *Ellis*, 236 Ill. 2d at 54. The plaintiff in *Ellis* was a charitable organization that was named as a beneficiary of the decedent's will executed in 1964. *Ellis*, 236 Ill. 2d at 48. In 1999, the decedent executed a new will that left her entire estate to her pastor. *Ellis*, 236 Ill. 2d at 48. After the decedent died, her 1999 will was admitted to probate. *Ellis*, 236 Ill. 2d at 48.

¶ 28    The plaintiff did not learn of its interest in the decedent's 1964 will until nearly three years after her death. *Ellis*, 236 Ill. 2d at 48. The plaintiff then filed a claim for intentional interference with an inheritance expectancy against the decedent's pastor, alleging that but for the pastor's intentional scheme to exercise undue influence over the decedent and abuse his position of trust, the plaintiff would be the sole beneficiary of the decedent's estate. *Ellis*, 236 Ill. 2d at 49. The plaintiff specifically alleged that the pastor induced the decedent to buy him gifts during her lifetime and to execute the 1999 will naming the pastor as the sole beneficiary of her estate. *Ellis*, 236 Ill. 2d at 49.

¶ 29    Unlike the plaintiffs in *Robinson*, the plaintiff in *Ellis* was allowed to proceed with its tort claim because a will contest proceeding under the Act was not "available" to it and,

therefore, it could not be said that the plaintiff voluntarily relinquished an opportunity to follow that required procedural course. The plaintiff in *Ellis* was "unaware of its bequest in the 1964 will until more than two years after the 1999 will had been admitted to probate." *Ellis*, 236 Ill. 2d at 54. Thus, it never had the opportunity to proceed under the Act. *Ellis*, 236 Ill. 2d at 54.

¶ 30    Additionally, *Ellis* recognized that a will contest would not have provided the plaintiff with the relief it sought. The plaintiff in *Ellis* sought recovery of *inter vivos* transfers of property. *Ellis*, 236 Ill. 2d at 56. However, a will contest would only have allowed the plaintiff to recover assets that were part of the estate and would not have extended to the *inter vivos* transfers, which further supported the conclusion that the will contest proceeding was unavailable to the plaintiff. *Ellis*, 236 Ill. 2d at 56 (citing *In re Estate of Jeziorski*, 162 Ill. App. 3d 1057, 1063 (1987)).

¶ 31    Accordingly, we answer the certified question,

"Does the six[-]month limitations period of 755 ILCS 5/8-1(f) for bringing a contest to the validity of a trust that receives a legacy from a will admitted to probate apply to a tort action, including an action for [i]ntentional [i]nterference with an [i]nheritance [e]xpectancy ***?"

in the negative with qualification. As with subsection (a), the plain language of subsection (f) provides that the six-month limitation period applies to challenges to the validity of a trust but does not apply to actions for intentional interference with an inheritance expectancy involving a trust that receives a legacy from a will. See *Ellis*, 236 Ill. 2d at 56. The exception to that rule, based on the logic of *Robinson*, also extends to actions involving subsection (f). That is, if a trust contest is "available" to a litigant, such that he is "aware" of his legacy and has an opportunity to contest the trust and to obtain complete relief, but chooses not to, instead agreeing to take no action against the trust in exchange for a settlement, then he cannot later bring a separate action for intentional interference with an inheritance expectancy. See *Ellis*, 236 Ill. 2d at 54; see also *Boyar*, 2012 IL App (1st) 111013, ¶ 30. This exception represents the essence of the doctrines of election and estoppel, both of which have long been applied in probate matters. See *Boyar*, 2012 IL App (1st) 111013, ¶ 28 ("once a beneficiary has accepted a benefit under [a] will, he will be estopped from asserting any claim inconsistent with or contrary to the validity of that will").

¶ 32    However, we decline to address the remainder of the certified question. As too often happens, a certified question is framed as a question of law, but the ultimate disposition depends on "the resolution of a host of factual predicates." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469 (1998); see also *Morrissey*, 334 Ill. App. 3d at 258. Thus, any answer we provide would be an advisory opinion. *Dowd & Dowd*, 181 Ill. 2d at 469. The courts of Illinois do not issue advisory opinions to guide future litigation and this case is no exception. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003). Specifically, the remainder of the question calls for an application of the *Robinson* exception to the facts of this case to determine whether a trust contest was "available" to plaintiffs, which is beyond the scope of this appeal. *Walker*, 383 Ill. App. 3d at 133 (a Rule 308 appeal is limited to answering a certified question of law and was not intended to address the application of the

law to the facts of a particular case).

¶ 33      Additionally, and for the same reason, we need not discuss *Bjork* despite the importance placed on it in the court below. The difference in the procedural postures of these cases makes *Bjork* inapplicable. In *Bjork*, we applied *Ellis* to determine whether under the facts of that case, a will contest was "available" to the plaintiff, thereby precluding her action for intentional interference with an inheritance expectancy. *Bjork*, 2012 IL App (1st) 111617, ¶ 13. In this case, the court must make that determination on remand; any doubts about how that determination is made must be addressed on direct appeal after a final order has been entered in the case.

¶ 34      Certified question answered; cause remanded.